**McGuire Law, P.C.**
Eugene Y. Turin (State Bar No. 342413)
10089 Willowcreek Road, Suite 200
San Diego, CA 92131
Tel: (312) 893-7002
Fax: (312) 275-7895
eturin@mcgpc.com

*Counsel for Plaintiffs and the Proposed Class and Subclass*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CAROLE WELLS; DONNA MARSHALL; MARTIN VALENCIA; and TANISHA DANTIGNAC individually and on behalf of similarly situated individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>INVOCA, INC.,<br><br>Defendant. | Case No.: 2:25-cv-01323-HDV-BFM<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**1) Violation of Cal. Pen. Code § 631**<br>**2) Violation of Cal. Pen. Code § 632**<br>**3) Violation of Cal. Pen. Code § 637.5**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Carole Wells, Donna Marshall, Martin Valencia, and Tanisha Dantignac (collectively "Plaintiffs"), bring this First Amended Class Action Complaint on behalf of themselves, and all others similarly situated against Defendant Invoca, Inc. ("Defendant" or "Invoca"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This action concerns customer service phone calls placed to AT&T, Inc ("AT&T") being illegally and intentionally tapped surveilled and recorded by Invoca, Inc. ("Invoca") in violation of the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code §§ 631, 632, and 637.5.

2. AT&T employs a conversation intelligence software-as-a-service provided by Invoca. This conversation intelligence service derives information regarding the content of telephone conversations between AT&T customers and its call centers. Invoca's service records AT&T customers' speech, transcribes it, then feeds it into Invoca's internal artificial intelligence ("AI").

3. Once the data is classified by Invoca's internal AI, such data is then presented back to AT&T in the form of dashboards, searchable transcripts, and reports, sometimes in real-time to the customer service agents speaking with the customer. AT&T employs Invoca to perform such recordings and analysis for the purpose of more effectively promoting their own products to current and potential customers.

4. As such, Invoca monitors, reads, records, learns the contents of, or otherwise intercepts the conversations between AT&T's contact centers and AT&T's callers, including current and prospective consumers. Such callers include individuals who call AT&T customer service lines from California to, among other things, retrieve and exchange information on AT&T telecommunication services, schedule in-person appointments, and receive additional forms of AT&T customer support.

5. Moreover, Invoca has the capability to use the contents of such recorded conversations for its own purposes separate from providing a recording to AT&T. However, neither AT&T nor Invoca procured the consent of any person who interacted with AT&T's contact centers, prior to Invoca recording, accessing, reading, and learning the contents of their conversations.

6. Plaintiffs bring this action to prevent Defendant from further violating the privacy rights of California residents, and to recover statutory damages from

Defendant for failing to comply with the CIPA.

**PARTIES**

7. Plaintiff Carole Wells is a resident of California who resides in Los Angeles, California.

8. Plaintiff Donna Marshall is a resident of California who resides in Los Angeles, California.

9. Plaintiff Martin Valencia is a resident of California who resides in Altadena, California.

10. Plaintiff Tanisha Dantignac is a resident of California who resides in Los Angeles, California.

11. Defendant Invoca, Inc. is a Delaware corporation with its principal place of business in Santa Barbara, California.

**JURISDICTION AND VENUE**

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action where there are more than 100 members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one member of the putative Class is a citizen of a state different from Defendant.

13. This Court has personal jurisdiction over Defendant because Defendant is headquartered in California and operates under the laws of California, and Plaintiffs' claims stem from Defendant's activities in California. Plaintiffs and the other Class Members suffered harm in California because California is where Defendant recorded their interactions.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to this action occurred in this District as Defendant is headquartered in this District and Plaintiffs' calls were recorded by Defendant through its technology in this District.

## FACTUAL ALLEGATIONS

### I. The California Invasion of Privacy Act

15. CIPA was enacted "to protect the right of privacy of the people of [California]." Cal. Penal Code § 630. The California Legislature was concerned about emergent technologies that allowed for "eavesdropping upon private communications," believing such technologies "created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." *Id.*

16. The California Supreme Court has repeatedly stated an "express objective" of CIPA is to "protect a person placing or receiving a call from a situation where the person on the other end of the line *permits an outsider to tap his telephone or listen in on the call*." *Ribas v. Clark*, 38 Cal. 3d 355, 364 (1985) (emphasis added).

17. As part of CIPA, the California Legislature enacted § 631(a) which prohibits any person or entity from [i] "intentionally tap[ping], or mak[ing] any unauthorized connection … with any telegraph or telephone wire," [ii] "willfully and without the consent of all parties to the communication … read[ing], or attempt[ing] to read, or to learn the contents or meaning of any … communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within [California]," or [iii] "us[ing], or attempt[ing] to use … any information so obtained."

18. CIPA § 631(a) also penalizes [iv] those who "aid[], agree[] with, employ[], or conspire[] with any person" who conducts the aforementioned wiretapping, or those who "permit" the wiretapping.

19. As part of CIPA, the California Legislature additionally introduced § 632(a), which prohibits any person or entity from "intentionally and without the consent of all parties to a confidential communication, us[ing] an electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication."

20. Further, CIPA § 637.5 prohibits any person who (a) "owns, controls, operates, or manages a satellite or cable television corporation, or who leases channels on a satellite or cable system" from (1) using "any electronic device to record, transmit, or observe any events or listen to, record, or monitor any conversations that take place inside a subscriber's residence, workplace, or place of business, without obtaining the express written consent of the subscriber." Cal. Pen. Code § 637.5(a)(1). Moreover, any person "receiving subscriber information from a satellite or cable television corporation shall be subject to the provisions of this section." Cal. Pen. Code § 637.5(h).

21. Individuals may bring an action against the violator of CIPA §§ 631, 632, and 637.5 for $5,000 per violation. *See* Cal. Penal Code § 637.2(a)(1).

## II. Defendant Violates the CIPA

### A. Overview of the Invoca Service

22. Invoca uses artificial intelligence to "analyze phone conversations at scale and unlock insights."[1] Such insights include allowing Invoca's customers to "measure call quality, intent, and outcomes, transforming conversations into actionable data. This data is crucial for optimizing marketing strategies, improving customer service, and driving revenue growth."[2]

23. Invoca offers a broad suite of products aimed at call recording and transcription. One such product, Signal AI Studio, "uses Invoca's advanced machine-learning technology to automatically analyze phone conversations."[3] Such analysis includes "if each caller was a lead, if they converted, and what product or service the called from."[4] Invoca's customers are then able to use such data to "make smarter marketing optimizations to drive more high-value phone leads at a lower cost" and

---

[1] https://www.invoca.com/product/call-tracking-analytics.
[2] *Id.*
[3] https://www.invoca.com/product/signal-ai-studio.
[4] *Id.*

utilize the Invoca product suite to further "track contact center agent performance and call handling across multi-location businesses, aiding in the coaching process."[5]

24. Another product, Invoca's Call Recordings and Transcriptions, provides "a searchable database of every call recording and transcript."[6] Such transcription is powered by generative AI LLMs (large language models) that turn call recordings into text with, as Invoca brags, "unmatched precision" that "identifies and extracts words and terms spoken on a call, storing it in Invoca as structured, actionable data."[7]

25. Invoca effectively eavesdrop upon, records, extracts data from, and analyzes conversations to which it is not a party. Invoca itself is collecting the content of the conversations.

26. That data is then analyzed by Invoca before being provided to any entity that was a party to the conversation. Indeed, Invoca has the capability to use the contents of conversations it collects through its product offerings for its own purposes and purposes beyond simply furnishing recordings to its customers. For example, Invoca can perform comprehensive analysis on the content of the calls it eavesdrops upon, including identifying the category of the speaker and determining the intent of the call, hence why Invoca "stores calls and call transcripts for internal queries."[8]

27. Invoca states in its Privacy Policy that it uses "Personal Data"—which includes call information "including phone numbers and recordings"—to "improve, operate, maintain, and, in some cases, market the Invoca Platform" and "conduct internal research in order to enhance the Invoca Platform and Services."[9]

28. Thus, Invoca has the capability to use the wiretapped data it collects through its product suite, namely the content of the phone calls it records, to operate, maintain, improve, and market its products and services.

---

[5] *Id.*
[6] https://www.invoca.com/product/call-recordings-and-transcriptions.
[7] https://www.invoca.com/blog/signal-ai-launch.
[8] https://www.invoca.com/data-privacy-security-compliance.
[9] https://www.invoca.com/privacy-policy.

**B. Invoca Wiretaps AT&T Customer Calls**

29. AT&T, a leading communications technology company, is an Invoca customer.[10] In 2018, AT&T implemented Invoca's revenue execution platform to increase the number of customer service calls it tracked.[11] Over four years, it scaled from tracking two million calls, to nearly ten million calls annually, all of which were tracked by Invoca.[12]

30. Specifically, AT&T implemented Invoca's advanced Signal analytics capabilities, wherein AT&T created over 45 different Invoca Signals to analyze calls, implementing sophisticated tools for phrase-spotting, AI-powered conversation analysis, customer sentiment detection, product interest tracking, and promotional offer monitoring.[13] This granular level of analysis by Invoca provided unprecedented insight into the content of the calls into AT&T's customer service line and allowed AT&T to more effectively market and sell products.[14]

31. Through AT&T's use of the Invoca services, Invoca reads, learns, monitors, and otherwise intercepts the content of communications between AT&T and its customers.

32. During such calls, consumers reasonably expect that their conversations with AT&T to be only between themselves and AT&T. However, both Invoca and AT&T fail to inform consumers, prior to any recording, that Invoca is listening in on consumers' communications with AT&T, including that the content of their communications with AT&T are being recorded and analyzed by a third party.

33. Neither AT&T nor Invoca procured consumers' consent for the conduct at issue.

---

[10] https://www.invoca.com/customers/att
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*

**III. Plaintiffs' Experiences**

34. Plaintiff Carole Wells is an AT&T customer and has called AT&T's customer service line within the past month in order to delay her payments.

35. Plaintiff Donna Marshall is an AT&T customer and has called AT&T's customer service line within the past year for the purpose of billing and service issues.

36. Plaintiff Martin Valencia is an AT&T customer and has called AT&T's customer service line within the past year, including in or around January 2023, when he spoke with AT&T regarding his telecommunication services and billing information.

37. Plaintiff Tanisha Dantignac is an AT&T customer and has called AT&T's customer service line within the past month in regarding billing issues.

38. When speaking with the AT&T contact center agents, Plaintiffs reasonably expected the conversations would be only between themselves and the AT&T contact center agent. Plaintiffs did not expect or have any reason to expect that Invoca, a third party, was listening in on their conversations, nor did they have any reason to suspect that call recording, transcription, and analysis were being provided by a third party, Invoca, rather than AT&T.

39. Nonetheless, Invoca eavesdropped on Plaintiffs' entire conversations with AT&T's contact center agents. Invoca monitored, recorded, and transcribed Plaintiffs' conversations with AT&T in real-time and performed AI analysis on the content of the calls. This included capturing Plaintiffs' intent and/or reason for calling, service interests, conversion outcome, and tracked the words and phrases they said during the conversations. Through this process, Invoca read and learned, in real-time, the contents of Plaintiffs' conversations with AT&T.

40. Neither AT&T nor Invoca informed Plaintiffs prior to recording that Invoca was listening in on customers' phone calls with AT&T, including that the content of their phone calls with AT&T are being recorded and analyzed by Invoca.

Invoca and AT&T, therefore, failed to procure Plaintiffs' consent for the conduct at issue.

41. Plaintiffs did not have any knowledge about Defendant's unlawful actions at the time that they placed calls to AT&T's contact center agents and had no reason to believe that their calls were being wiretapped by Invoca.

42. Although AT&T is ostensibly "engaged in the business of providing communications services" (CIPA §§ 631(b)(1), 632(e)), Invoca's services were not implemented for the "purpose of construction, maintenance, conduct, or operation" of AT&T's communications services as they were implemented for marketing purposes and were not required for AT&T's continued operation of its communications' services. Moreover, Invoca also used its services to obtain information for its own independent purposes entirely unrelated to AT&T's operations.

43. Plaintiffs have, accordingly, had their privacy invaded and been exposed to the risks and harmful conditions created by Invoca's violations of CIPA alleged herein.

## FRAUDULENT CONCEALMENT AND TOLLING

44. The applicable statute of limitations are tolled by virtue of Defendant's knowing and active concealment of the facts alleged above. Plaintiffs and the other Class members were ignorant of the information essential to the pursuit of these claims, without any fault or lack of diligence on their own part.

45. At the time the action was filed, Defendant was under a duty to disclose the true character, quality, and nature of its activities to Plaintiffs and the Class. Defendant is therefore estopped from relying on any statute of limitations.

46. Defendant's fraudulent concealment is common to the Class.

## CLASS ALLEGATIONS

47. Plaintiffs seek certification of the following Class and Subclass:

**<u>The Nationwide Class</u>**: all United States residents who, within the applicable statute of limitations period, called AT&T's customer service line and whose conversations with AT&T were intercepted and recorded by Invoca.

**<u>The California Subclass</u>**: all California residents who, within the applicable statute of limitations period, called AT&T's customer service line while in California and whose conversations with AT&T were intercepted and recorded by Invoca.

48. Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Class and Subclass. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and Subclass, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class and Subclass.

49. Absent a class action, most members of the Class and Subclass would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

50. Defendant has acted and failed to act on grounds generally applicable to Plaintiffs and the other members of the Class and Subclass, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and Subclass, and making injunctive or corresponding declaratory relief appropriate for the Class and Subclass as a whole.

51. The factual and legal bases of Defendant's liability to Plaintiffs and to the other members of the Class and Subclass are the same, resulting in injury to Plaintiffs and to all of the other members of the Class and Subclass. Plaintiffs and the other

members of the Class and Subclass have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct.

52. Millions of AT&T customers have had their calls intercepted by Invoca such that joinder of all members is impracticable.

53. There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Class and Subclass, and those questions predominate over any questions that may affect individual members of the Class and Subclass. Common questions for the Class and Subclass include, but are not limited to, the following:

(a) Whether Defendant recorded Plaintiffs' and the Class' and Subclass' phone calls with AT&T;

(b) Whether Defendant obtained valid express written consent to perform such recording;

(c) Whether Defendant's conduct constitutes a violation of Cal. Penal Code §§ 631, 632, and 637.5;

(d) Whether Plaintiffs and the Class and Subclass are entitled to monetary and/or restitutionary and/or injunctive relief or other remedies, and, if so, the nature of such remedies.

**<u>FIRST CAUSE OF ACTION</u>**
**Violation of the California Invasion of Privacy Act**
**Cal. Pen. Code § 631(a)**
**(On Behalf of Plaintiffs and the Nationwide Class and California Subclass)**

54. Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

55. CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978). Therefore, to establish liability under CIPA § 631(a), a plaintiff need only establish that the defendant "by means of any machine, instrument, contrivance, or in any other

manner," committed any of the following:

(i) intentionally tapped, or made any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, cable, or instrument of any internal telephonic communication system;

or

(ii) willfully and without consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state;

or

(iii)

uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained;

or

(iv) aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit or cause to be done any of the acts or things mentioned above in this section. Cal. Pen. Code. § 631 (a).

56. Invoca's call tracking services are a "machine, instrument, contrivance, or . . . other manner" used to engage in the prohibited conduct at issue.

57. Invoca is a separate legal entity from AT&T that offers "'software-as-aservice' and not merely a passive device." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021). Accordingly, Invoca was a third party to any communication between Plaintiffs and members of the Class, on the one hand, and AT&T, respectively, on the other. *Id.* at 521; see also *Flowers v. Twilio, Inc.*, 2016 WL 11684603, at *1 (Cal. Super. Ct. Aug. 2, 2016) ("[T]he complaint makes clear that it is Twilio, not its clients, that recorded the communications … The allegations are not, as Twilio asserts,

that Twilio simply provided a software product that third parties misused.”).

58. Invoca is a third party wiretapper because it has the capability to use the contents of conversations it collects through the Services for its own purposes, other than simply furnishing the recording to its clients, such as AT&T. *See Javier v. Assurance IQ, LLC*, 2649 F. Supp. 3d 891, 900 (N.D. Cal. 2023*); see also Yockey v. Salesforce, Inc.*, --- F. Supp. 3d ---, 2023 WL 5519323, at *5 (N.D. Cal. Aug. 25, 2023).

59. At all relevant times, through the Services, Invoca violated the first prong of CIPA § 631(a) by intentionally tapping, electrically or otherwise, the lines of telephone communication between Plaintiffs and Class Members, on the one hand, and AT&T, on the other hand.

60. At all relevant times, through its call tracking services, Invoca violated the second prong of CIPA § 631(a) by willfully and without the consent of all parties to the communication, or in any authorized manner, reading or attempting to read or learn the contents of electronic communications between Plaintiffs and Class Members, on the one hand, and AT&T, on the other hand, while the electronic communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within the United States or California.

61. Invoca failed to inform Plaintiffs and Class Members: (i) that Invoca, as a third party, was listening in on communications between Plaintiffs and Class Members, on the one hand, and AT&T, on the other hand; (ii) that Invoca, as a third party, was tapping or otherwise making an unauthorized connection with Plaintiffs’ and Class Members’ conversations with AT&T using the call tracking services; and (iii) that the content of Plaintiffs’ and Class Members’ communications with AT&T were being recorded, collected, intercepted, and analyzed by, Invoca, a third party.

62. Accordingly, neither Plaintiffs nor any other Class Member provided their prior consent to Invoca’s intentional access, interception, learning, recording, and/or collection of Plaintiffs’ and Class Members’ oral communications with AT&T. *See Javier*, 2022 WL 1744107, at *2 (“[W]e conclude that the California Supreme Court

would interpret Section 631(a) to require the prior consent of all parties to a communication").

63. Invoca knows it is a separate and distinct third-party entity from AT&T customer service agents, the consumers speaking with AT&T, and the conversations at issue. Invoca knows it is eavesdropping upon and recording conversations to which it is not a party.

64. Invoca's services were not implemented for the "purpose of construction, maintenance, conduct, or operation" of AT&T's communications services as they were implemented for marketing purposes and were not required for AT&T's continued operation of its communications' services. Moreover, Invoca also used its services to obtain information for its own independent purposes entirely unrelated to AT&T's operations.

65. Because Defendant is headquartered in California, a violation under CIPA § 631 can be pursued by all individuals whose oral communications to AT&T customer service agents have been intercepted and/or collected by Invoca nationwide, regardless of where the individual resides.

66. The violation of CIPA § 631(a) constitutes an invasion of privacy sufficient to confer Article III standing.

67. Pursuant to Cal. Penal Code § 637.2, Plaintiffs and members of the Nationwide Class and California Class have been injured by the violations of CIPA § 631(a), and each seeks statutory damages of $5,000 for each of Invoca's violations of CIPA § 631(a).

## SECOND CAUSE OF ACTION
**Violation of the California Invasion of Privacy Act,**
**Cal. Pen. Code § 632(a)**
**(On Behalf of Plaintiffs and the Nationwide Class and California Subclass)**

68. Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

69. CIPA § 632(a) prohibits an entity from "intentionally and without the consent of all parties to a confidential communication, us[ing] an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio." Cal. Penal Code § 632(a).

70. Invoca's call tracking services are an "electronic amplifying or recording device."

71. At all relevant times, Invoca intentionally recorded the confidential communications of Plaintiffs and the other Class Members.

72. At all relevant times, the communications between Plaintiffs and the other Class Members, on the one hand, and AT&T, on the other, were confidential. Communications entail discussions of financial information for payment processing, and other forms of information required for the purpose of identity verification.

73. When communicating with AT&T, Plaintiffs and the other Class Members had an objectively reasonable expectation of privacy. Plaintiffs and the other Class Members did not expect that Invoca, an unknown third party, would intentionally use an electronic amplifying or recording device to record their confidential communications.

74. Plaintiffs and Class Members did not consent to any of Invoca's intentional use of an electronic amplifying or recording device to record their confidential communications.

75. Because Defendant is headquartered in California, a violation under CIPA § 632 can be pursued by all individuals whose oral communications to AT&T's customer service agents have been unlawfully recorded by Invoca nationwide, regardless of where the individual resides. *See Bona Fide Conglomerate, Inc.*, 2016 WL 3543699, at *6; *see also Carrese*, 2016 WL 6069198, at *4; *Valentine*, 804 F. Supp. 2d 1022, 1028 (N.D. Cal. 2011).

76. Invoca's services were not implemented for the "purpose of construction, maintenance, conduct, or operation" of AT&T's communications services as they were implemented for marketing purposes and were not required for AT&T's continued operation of its communications' services. Moreover, Invoca also used its services to obtain information for its own independent purposes entirely unrelated to AT&T's operations

77. The violation of CIPA § 632(a) constitutes an invasion of privacy sufficient to confer Article III standing.

78. Pursuant to Cal. Penal Code § 637.2, Plaintiffs and the other Class Members have been injured by the violations of CIPA § 632(a), and each seek statutory damages of $5,000 for each of Invoca's violations of CIPA § 632(a).

**<u>THIRD CAUSE OF ACTION</u>**

**Violation of the California Invasion of Privacy Act**

**Cal. Pen. Code § 637.5**

**(On Behalf of Plaintiffs and the Nationwide Class and California Subclass)**

79. Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

80. Plaintiffs bring this claim individually and on behalf of the members of the Class and Subclass against Defendant.

81. Under CIPA § 637.5(a)(1), "[n]o person who owns, controls, operates, or manages a satellite or cable television corporation, or who leases channels on a satellite or cable system" shall "[u]se any electronic device to record, transmit, or observe any events or listen to, record, or monitor any conversations that take place inside a subscriber's residence, workplace, or place of business, without obtaining the express written consent of the subscriber."

82. Further, "[a]ny person receiving subscriber information from a satellite or cable television corporation shall be subject to the provisions of this section." CIPA § 637.5(h).

83. AT&T is a "cable television corporation" because it is a "corporation or firm which transmits television programs by cable to subscribers for a fee." Cal. Pub. Util. § 216.4; CIPA § 637.5(f)(1). AT&T's cable television offerings are well-documented in its marketing materials.[15]

84. Invoca's call tracking service provided to AT&T is an "electronic device" for purposes of CIPA § 637.5(a)(1).

85. Invoca is a separate legal entity that offers software-as-a-service (Saas) and not merely a passive device. Accordingly, as an LLC, Invoca is a "person" for purposes of CIPA § 637.5(h) as defined under CIPA § 637.5(f)(3).

86. At all relevant times, Invoca listened, recorded, and/or otherwise monitored Plaintiffs and the other Class and Subclass members' conversations with AT&T that took place inside their residence, workplace, or place of business when they called AT&T's contact centers.

87. Plaintiffs and the other members of the Class and Subclass did not consent to any of Defendant's actions discussed above.

88. The violation of CIPA § 637.5 constitutes an invasion of privacy sufficient to confer Article III standing.

89. Pursuant to Cal. Penal Code § 637.2, Plaintiffs and the other Class Members have been injured by the violations of CIPA § 637.5, and each seeks statutory damages of $5,000 for each of Invoca's violations of CIPA § 637.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully requests that this Court enter a judgment against Defendant for the following relief:

(a) For an order certifying the Class and Subclass, naming Plaintiffs as Class Representatives, and naming Plaintiffs' attorneys as Class Counsel to represent the Class;

---

[15] https://www.att.com/bundles/

(b) For an order declaring that Defendant's conduct violates Cal. Penal Code §§ 631, 632 and 637.5;

(c) For actual, compensatory, statutory, and/or punitive in amounts to be determined by the Court and/or jury;

(d) For prejudgment interest on all amounts awarded;

(e) For an order of restitution and all other forms of equitable monetary relief;

(f) For injunctive relief as pleaded or as the Court may deem proper; and

(g) For an order awarding Plaintiffs and the Class and Subclass their reasonable attorneys' fees, expenses, and costs of suit.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all causes of action and issues so triable.

Dated: June 27, 2025

Respectfully Submitted,

By: /s/ *Eugene Y. Turin*
Eugene Y. Turin

**McGuire Law, P.C.**
Eugene Y. Turin (State Bar No. 342413)
10089 Willowcreek Road, Suite 200
San Diego, CA 92131
Tel: (312) 893-7002
Fax: (312) 275-7895
eturin@mcgpc.com

*Counsel for Plaintiffs and the Proposed Class and Subclass*