TYLER G. NEWBY (CSB No. 205790)
tnewby@fenwick.com
MARY GRIFFIN SIMS (CSB No. 324073)
mgriffin@fenwick.com
YI CHEN (CSB No. 352696)
ychen@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

Attorneys for Defendant
INVOCA, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CAROLE WELLS; DONNA MARSHALL; MARTIN VALENCIA; and TANISHA DANTIGNAC, individually and on behalf of similarly situated individuals,

Plaintiffs,

v.

INVOCA, INC.,

Defendant.

Case No.: 2:25-cv-01323-HDV-BFMx

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Date: October 30, 2025
Time: 10:00 a.m.
Dept: Courtroom 5B
Judge: Honorable Hernán D. Vera

Date Action Filed: February 14, 2025

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 30, 2025, at 10:00 a.m., or thereafter as soon as available, in the courtroom of the Honorable Hernán D. Vera, located at 350 W. 1st Street, Courtroom 5B, Los Angeles, California 90012, Defendant Invoca, Inc. ("Invoca") will and hereby does move the Court for an order dismissing this action under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim and an order striking the nationwide class and allegations under Federal Rule of Civil Procedure 12(f).

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on June 17, 2025.

This Motion is based on this Notice of Motion, Invoca's Memorandum of Points and Authorities, Invoca's Request for Judicial Notice, the Declaration of Tyler G. Newby, the Declaration of Nathan Ziv, any Reply that Invoca may file in support of this Motion, and any evidence and argument presented to the Court.

Dated: July 28, 2025

FENWICK & WEST LLP

By: */s/ Tyler G. Newby*
Tyler G. Newby

Attorneys for Defendant
Invoca, Inc.

# TABLE OF CONTENTS


Page

NOTICE OF MOTION ........ I

I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 3

III. LEGAL STANDARD ........ 4

A. Motion To Dismiss: Rules 12(b)(1) And 12(b)(6) ........ 4

B. Motion To Strike ........ 6

IV. ARGUMENT ........ 6

A. Plaintiff Marshall Lacks Standing Under 12(b)(1). ........ 6

B. The Amended Complaint Fails To State A Claim Under 12(b)(6). ........ 7

C. Plaintiffs' Nationwide CIPA Claims Should Be Stricken Under Rule 12(f) Or, In The Alternative, Dismissed Under Rule 12(b)(6). ........ 16

D. Because The Court Should Strike Plaintiffs' Nationwide CIPA Claims, It Should Also Find That The Amended Complaint Does Not Adequately Plead CAFA Jurisdiction. ........ 18

CONCLUSION ........ 20


FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adams v. Johnson*,
355 F.3d 1179 (9th Cir. 2004) .... 6

*Alonzo v. Saddle Ranch Holdings, LLC*,
No. CV 21-06630-CJC, 2021 WL 10378013 (C.D. Cal. Oct. 7, 2021) .... 19

*Arizona v. Yellen*,
34 F.4th 841 (9th Cir. 2022) .... 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .... 5

*Ashoff v. City of Ukiah*,
130 F.3d 409 (9th Cir. 1997) .... 4

*Bate v. Securly, Inc.*,
No. 23-cv-1304-AGSDEB, 2024 WL 3928892 (S.D. Cal. Aug. 23, 2024) .... 4, 18, 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .... 5

*Benavidez v. Cnty. Of San Diego*,
993 F.3d 1134 (9th Cir. 2021) .... 5

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023) .... 8

*Cody v. Boscov's, Inc.*,
658 F. Supp. 3d 779 (C.D. Cal. 2023) .... 8, 10

*Cover v. Windsor Surry Co.*,
No.14-cv-05262-WHO, 2016 WL 520991 (N.D. Cal. Feb. 10, 2016) .... 17

*Davison v. Kia Motors Am., Inc.*,
No. SACV 15-00239-CJC(RNBx), 2015 WL 3970502 (C.D. Cal. June 29, 2015) .... 17

*Diva Limousine, Ltd. v. Uber Techs., Inc.*,
392 F. Supp. 3d 1074 (N.D. Cal. 2019) .... 18

*Erceg v. LendingClub Corp.*,
475 F. Supp. 3d 1071 (N.D. Cal. 2020) .... 17

*Flanagan v. Flanagan*,
27 Cal. 4th 766, 41 P.3d 575 (2002) .... 15

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .... 8, 10, 11

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Halliday v. Panda Rest. Grp., Inc.*, No. 2:24-cv-05322-SVW-BFM, 2024 WL 3739163 (C.D. Cal. Aug. 9, 2024) .................... 18

*Hovsepian v. Apple, Inc.*, No. 08-5788 JF (PVT), 2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) .................................. 6

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) .................................................................................. 7

*In re Yahoo Mail Litig.*, 308 F.R.D. 577 (N.D. Cal. 2015) .......................................................................................... 17

*Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023) ........................................................................... 9

*Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025 (S.D. Cal. 2024) .................................................................... 11, 12

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ........................................................................................................ 4

*Kwan v. SanMedica Int'l*, 854 F.3d 1088 (9th Cir. 2017) ..................................................................................... 5

*Langer v. Guest*, No. 2:21-cv-02716-ODW, 2021 WL 4974039 (C.D. Cal. Oct. 26, 2021) ............................... 4

*Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018 (9th Cir. 2003) ..................................................................................... 5

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) ..................................................................................... 3

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ......................................................................... 16, 17

*Olean Wholesale Grocery Corp. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) ........................................................................................ 16

*Outdoor Media Grp., Inc. v, City of Beaumont*, 506 F.3d 895 (9th Cir. 2007) ....................................................................................... 5

*Park v. Webloyalty.com, Inc.*, No. 12cv1380-LAB (JMA), 2013 WL 4711159 (S.D. Cal. Aug. 30, 2013) ........................... 4

*Reyes v. Educ. Credit Mgmt. Corp.*, 773 F. App'x 989 (9th Cir. 2019) ........................................................................... 14

*Ribas v. Clark*, 38 Cal. 3d 355 (1985) ................................................................................................... 7, 8

*Ridgeway v. Spokeo, Inc.*, 697 F. Supp. 3d 979 (C.D. Cal. 2023) ........................................................................... 4

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) .......... 8

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) .......... 7, 8, 9

*Rosales v. United States*,
824 F.2d 799 (9th Cir. 1987) .......... 5

*Ruegsegger v. Caliber Home Loans*,
No. SACV 17-0907-DOC, 2019 WL 8163640 (C.D. Cal. Jan. 8, 2019) .......... 6

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) .......... 5

*Serrano v. 180 Connect, Inc.*,
478 F.3d 1018 (9th Cir. 2007) .......... 19

*Tavernetti v. Superior Court*,
22 Cal. 3d 187 (Cal. 1978) .......... 7

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 6

*Vinci v. Hyundai Motor Am.*,
No. 17-0997, 2018 WL 6136828 (C.D. Cal. Apr. 10, 2018) .......... 17

*Warden v. Kahn*,
99 Cal. App. 3d 805 (1979) .......... 7

*Williams v. What If Holdings, LLC*,
No. 22-03780-WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .......... 9, 11

**STATUTES AND RULES**

28 U.S.C. §1331(c)(1) .......... 18

28 U.S.C. § 1332(d)(2)(A) .......... 18

28 U.S.C. § 1332(d)(4)(A) .......... 20

28 U.S.C. § 1332(d)(4)(B) .......... 19

Class Action Fairness Act, 28 U.S.C. § 1332(d) .......... 18, 19, 20

Cal. Pen. Code § 631 .......... *passim*

Cal. Pen. Code. § 632 .......... 2, 14, 15

Cal. Pen. Code. § 637.5 .......... 2, 15

Cal. Pen. Code. § 637.5(h) .......... 15

California's Invasion of Privacy Act .......... *passim*

Fed. R. Civ. P. 8(a)(1) .... 4
Fed. R. Civ. P. 12(f) .... 6, 16
Fed. R. Civ. P. 12(b)(1) .... 4
Fed. R. Civ. P. 12(b)(6) .... 5, 16

**OTHER AUTHORITIES**

Newby Decl., Ex. A (https://www.invoca.com/data-privacy-security-compliance) .... 13
Newby Decl., Ex. B (https://www.invoca.com/privacy-policy) .... 14

FENWICK & WEST LLP
ATTORNEYS AT LAW

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Invoca is a service provider that provides software to businesses that frequently engage with their customers through the business' contact center. Invoca's software helps its business customers understand when and why consumers are calling and how to get them connected to the right agent to resolve their issues. Rather than licensing its software to businesses to install and operate on the businesses' premises, like so many business software service providers today, Invoca provides these services through the cloud as a software-as-a-service ("SaaS") offering. Some customers, including AT&T, use Invoca's software to record some (but by no means all) calls to their call centers. These calls are recorded and stored in the cloud for the customer's use, with Invoca's software acting as a cloud-based tape recorder.

Plaintiffs Carole Wells, Donna Marshall, Martin Valencia, and Tanisha Dantignac (collectively "Plaintiffs") allege that Invoca wiretapped and recorded their calls to AT&T in violation of California's Invasion of Privacy Act ("CIPA"). They do not allege that Invoca recorded their calls without AT&T's knowledge; to the contrary, they acknowledge that Invoca is a service provider to AT&T. Plaintiffs try to justify this action by alleging that they did not know that AT&T was using Invoca's software to record and store the calls. But that knowledge is irrelevant; as AT&T's service provider, Invoca and its software are extensions of AT&T, which cannot be liable for wiretapping its own conversations. Plaintiffs' misguided interpretations of CIPA, a criminal statute, would criminalize many cloud computing and software-as-a-service applications if adopted. Plaintiffs are wrong, and their amended complaint should be dismissed for the following reasons.

First, Plaintiff Marshall lacks both statutory and Article III standing to bring her claims. Though she alleges that she called AT&T within the past year, Invoca's records, which go back two years, show no calls placed from her phone number to

FENWICK & WEST LLP
ATTORNEYS AT LAW

an Invoca-provided phone number used by AT&T. The absence of records of a call from Plaintiff Marshall, or even most people who call AT&T, is not surprising, given that Invoca processes and records only calls to specific numbers it provides to AT&T for AT&T's use, not all calls to AT&T. Because Invoca's software did not receive or record Plaintiff Marshall's calls, she has suffered no injury-in-fact, and her claims should be dismissed with prejudice.

Even if the other Plaintiffs appear to have standing, Plaintiffs' claims under Section 631(a) of CIPA (Count I) fail because Plaintiffs do not sufficiently allege that Invoca is a third-party wiretapper or eavesdropper. Instead, the only factual allegations of the amended complaint are that Invoca records calls solely for the benefit of and use by AT&T. As such, Invoca is merely an extension of AT&T and is exempted from CIPA Section 631(a) liability as a party to AT&T's communications. Plaintiffs' claims under Section 632(a) of CIPA (Count II) fare no better. Plaintiffs' Section 632 claims fail because they consented to the recording of their calls by someone, which is fatal to a finding that they had a reasonable expectation of privacy in those calls. Plaintiffs' CIPA Section 637.5 claims also fail because that section applies only to cable and satellite television providers or licensees, which, as the amended complaint acknowledges, Invoca is not. Even if the Court were to find that Section 637.5 somehow applies to Invoca—it does not—Plaintiffs fail to sufficiently allege that Invoca received subscriber information. Nor do Plaintiffs sufficiently allege that Invoca illegally records, transmits, observes, listens to, records, or monitors any conversation between Plaintiffs and AT&T.

Finally, Plaintiffs' nationwide CIPA claims should be stricken because choice-of-law principles preclude them. Because the Court should strike Plaintiffs' nationwide CIPA claims, it should also find that the amended complaint fails to adequately plead jurisdiction under the Class Action Fairness Act ("CAFA").

Because no amendment could cure these pleading defects or the flawed legal theory on which they are based, the Court should dismiss the amended complaint

with prejudice. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (district court may deny otherwise-liberally granted leave to amend if "it determines that the pleading could not possibly be cured by the allegation of other facts.").

## II. STATEMENT OF FACTS

Invoca provides a cloud-based software-as-a-service that businesses such as AT&T use for a variety of sales and customer support functions, including recording customer calls. Am. Compl. ¶¶ 2-3. Invoca's customers can choose from a suite of services that Invoca offers, one of which is a product that allows its customers to record calls. *Id.* ¶¶ 23-24. While the amended complaint summarizes Invoca's marketing literature to describe the different services that Invoca customers could contract for and use, *id.* ¶¶ 22-26, the only feature the amended complaint plausibly alleges AT&T uses is call recording, *id.* ¶ 2.

Plaintiffs Wells, Marshall, Valencia, and Dantignac allege that they called AT&T's customer service line within the past year. *Id.* ¶¶ 34-37. They all allege that Invoca recorded these calls for AT&T. *Id.* ¶ 39. Plaintiffs allege that AT&T uses Invoca as a service provider to record consumers' phone conversations and that neither AT&T nor Invoca notified Plaintiffs that Invoca's software was recording the calls. *Id.* ¶¶ 2, 38, 40. Plaintiffs further allege, based solely on speculation, that Invoca fed transcriptions of Plaintiffs' call contents to Invoca's internal artificial intelligence and presented them back to AT&T "in the form of dashboards, searchable transcripts, and reports," thus "read[ing] and learn[ing], in real-time, the contents of Plaintiffs' conversation with AT&T." *Id.* ¶¶ 2-3, 39. The amended complaint does not allege where, presumably in the cloud, these recordings, transcriptions, and analyses take place. The amended complaint alleges in conclusory fashion that Invoca has the "capability to use" the contents of recorded customer calls "for its own purposes" beyond simply providing a recording to AT&T. *Id.* ¶¶ 5, 26. Based on these allegations, Plaintiffs allege that Invoca eavesdropped on and recorded those calls without their consent in violation of CIPA.

Invoca's software does not process or record every call placed to one of its customers. Declaration of Nathan Ziv, ¶ 2. Instead, Invoca's software receives, and potentially records, only calls made to designated phone numbers that Invoca provides to its customers. *Id.* In the case of AT&T, if a customer or potential customer calls AT&T using a phone number other than an Invoca-provisioned number, Invoca's software neither receives nor records the call. *Id.* ¶ 3. Invoca keeps records of the existence of calls to Invoca phone numbers used by AT&T for two years. *Id.* ¶ 4. Invoca has no records of Plaintiff Marshall calling an Invoca-provisioned number, nor does it have any recordings of calls by her. *Id.* ¶¶ 5-6. [1]

As shown in detail below, Plaintiffs' claims fail and should be dismissed.

## III. LEGAL STANDARD

### A. Motion To Dismiss: Rules 12(b)(1) And 12(b)(6)

A Federal Rule of Civil Procedure ("Rule") 12(b)(1) motion tests whether the court has subject matter jurisdiction. "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). "Plaintiff[] 'bears the burden of establishing subject matter jurisdiction.'" *Bate v. Securly, Inc.*, No. 23-cv-1304-AGSDEB, 2024 WL 3928892, at *1 (S.D. Cal. Aug. 23, 2024) (quoting *Ashoff v. City of Ukiah*, 130 F.3d 409, 410 (9th Cir. 1997)). The complaint must include "a short and plain statement of the grounds for the court's jurisdiction." *Park v. Webloyalty.com, Inc.*, No. 12cv1380-LAB (JMA), 2013 WL 4711159, at *1 (S.D. Cal. Aug. 30, 2013) (quoting Fed. R. Civ. P. 8(a)(1)). A court must dismiss a complaint under Rule 12(b)(1) if there is no subject matter jurisdiction.

Federal subject matter jurisdiction requires each plaintiff to have standing. *See Ridgeway v. Spokeo, Inc.*, 697 F. Supp. 3d 979, 983 (C.D. Cal. 2023). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Langer v. Guest*, No. 2:21-

[1] After filing their amended complaint, Plaintiffs' counsel provided Invoca's counsel with each plaintiff's phone number that they contend they used to call AT&T.

FENWICK & WEST LLP
ATTORNEYS AT LAW

cv-02716-ODW (PLAx), 2021 WL 4974039, at *1 (C.D. Cal. Oct. 26, 2021) (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). "A district court may hear evidence and make findings of fact necessary to rule on the subject matter jurisdiction question prior to trial, if the jurisdictional facts are not intertwined with the merits.... In such circumstances, no presumption of truthfulness attaches to the plaintiff's allegations." *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleading facts that are "'merely consistent with' a defendant's liability" is not enough. *Iqbal*, 556 U.S. at 678. To represent a class, of course, Plaintiffs first must have viable claims of their own. *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (if a plaintiff has no claim, "she cannot represent others who may have such a claim, and her bid to serve as a class representative must fail").

Although the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party," *Outdoor Media Grp., Inc. v, City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007), "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Legal conclusions are insufficient and "must be supported by factual allegations," *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 662), and "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss," *Benavidez v. Cnty. Of San Diego*, 993

F.3d 1134, 1145 (9th Cir. 2021) (quoting *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004)).

### B. Motion To Strike

Rule 12(f) allows the Court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A court may strike class allegations prior to discovery "if the complaint demonstrates that a class action cannot be maintained." *Hovsepian v. Apple, Inc.*, No. 08-5788 JF (PVT), 2009 WL 5069144, at *2 (N.D. Cal. Dec. 17, 2009); *see also Ruegsegger v. Caliber Home Loans*, No. SACV 17-0907-DOC (KESx), 2019 WL 8163640, at *6 (C.D. Cal. Jan. 8, 2019) (recognizing that courts in the Ninth Circuit have stricken class allegations when it is clear from the pleadings that the proposed class could not be certified).

## IV. ARGUMENT

### A. Plaintiff Marshall Lacks Standing Under 12(b)(1).

Plaintiff Marshall lacks standing because Invoca did not record any of her calls to AT&T. To establish standing, "a plaintiff must show (i) that [the plaintiff] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "A concrete injury is one that actually exists, meaning that it is real, and not abstract." *Arizona v. Yellen*, 34 F.4th 841, 848 (9th Cir. 2022) (quotations omitted).

Plaintiff Marshall alleges that she is an AT&T customer and has called AT&T's customer service line "within the past year." Am. Compl. ¶ 35. Plaintiff Marshall also alleges that, during her call to AT&T, Invoca eavesdropped on her call and recorded it without consent. *Id.* ¶ 39. She bases her allegations on speculation, but that speculation is unfounded. Invoca has no record of calls from Plaintiff Marshall's phone to any phone number supplied by Invoca for AT&T. Declaration of Nathan Ziv, ¶¶ 5-6. Accordingly, because Invoca did not receive, let alone record, any calls from Plaintiff Marshall to AT&T, Plaintiff Marshall suffered no injury-in-

FENWICK & WEST LLP
ATTORNEYS AT LAW

fact and lacks standing to pursue her claims. The Court should dismiss her claims for lack of subject matter jurisdiction with prejudice.

### B. The Amended Complaint Fails To State A Claim Under 12(b)(6).

#### 1. Plaintiffs' Section 631(a) Claims Fail—Count I.

Plaintiffs' first cause of action alleges that Invoca violated the wiretapping provision found in CIPA Section 631(a). CIPA Section 631(a) contains three operative clauses covering "three distinct and mutually independent patterns of conduct": (1) "intentional wiretapping," (2) "[willfully] attempting to learn the contents or meaning of a communication in transit over a wire," and (3) "attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Tavernetti v. Superior Court*, 22 Cal. 3d 187, 192 (Cal. 1978). Plaintiffs allege that Invoca violated the first and second prongs. Am. Compl. ¶¶ 59-60. Plaintiffs fail to state a claim under CIPA Section 631(a) because the amended complaint fails to allege facts sufficient to show that Invoca is a third party that makes independent use of recorded calls rather than an extension of AT&T.

Section 631(a) exempts parties to a communication from liability for the self-evident reason that no person can intercept communications to which they are a party. *See In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 607 (9th Cir. 2020)*; see also Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) ("[S]ection 631 . . . has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation."). Thus, the central question that the amended complaint raises is whether Invoca, as a provider of call recording software, is merely an extension of AT&T, which Plaintiffs allege is a party to communications with Plaintiffs, or whether it is a third-party eavesdropper. This distinction arises from two seminal cases: *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985), and *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975). Comparing these decisions is instructive. In *Rogers*, the defendant secretly tape-recorded a conversation with the plaintiff. *Rogers,* 52 Cal. App. 3d at 897. The court found that because the defendant was a

party to the conversation, he did not violate Section 631(a). *Id.* at 898-99. The court further explained that "eavesdrop" means "'to listen secretly to what is said in private.' It is never a secret to one party to a conversation that the other party is listening to the conversation; only a third party can listen secretly to a private conversation." *Id.* at 899. In contrast, in *Ribas* the defendant "listen[ed] in on an extension telephone" to a conversation between plaintiff and his former wife" without the plaintiff's knowledge. *Ribas,* 38 Cal. 3d 355, 356. Finding that this conduct stated a claim for eavesdropping, the court observed that "a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device." *Id.* at 360-61. Thus, California courts have analyzed whether a service provider's actions are analogous to a participant in a conversation using a tape recorder, as in *Rogers*, or if they are more akin to allowing a third party to secretly listen in on a conversation in real time, as in *Ribas*.

"Despite widespread agreement among courts in this Circuit as to the nature of [this] inquiry, courts have split on how the party exception applies in the context of third-party software, as well as how stringently pleading standards should be applied." *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1118 (S.D. Cal. 2024). Some courts have held that service providers of recording technology are mere extensions of the party to the communication when the service provider records or processes the communication solely for the party and does not actually use the recordings for its own purposes. *See, e.g., Cody v. Boscov's, Inc.*, 658 F. Supp. 3d 779, 782 (C.D. Cal. 2023) (dismissing CIPA Section 631(a) claim where the complaint failed to plead facts that service providers recorded "Defendant's customers' information for some use or potential future use beyond simply supplying this information back to Defendant"); *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1068 (C.D. Cal. 2023) (similar); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832-33

(N.D. Cal. 2021) (reasoning that "a vendor that provides a [] service" allowing a website operator "to record and analyze its own data" is not a third-party wiretapper); *Williams v. What If Holdings, LLC*, No. 22-03780-WHA, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022) (finding that third-party website screen recording service was merely a tool used by the website operator to record its own communications with the plaintiff). Other courts have taken a broader view, finding that a service provider is a third party if it has the "capability" to use customer data "for any other purpose." *See e.g.*, *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023).

Invoca submits that the better test is one that looks to whether the complaint plausibly alleges that the service provider records the communications for its own purposes or uses the communications independent of providing a service to the party to the communications. That is, if the complaint does not allege facts raising a plausible inference that the service provider records the communications for its own purposes other than providing a call recording service to its customer, then the service provider is merely an extension of the customer, much like the mechanical tape recorder in *Rogers*. Judge Alsup's opinion in *Williams*, 2022 WL 17869275, at *3, which dismissed a claim that the defendant's use of third-party software to record the plaintiff's visit to the defendant's website violated CIPA, is instructive. The court explained that the relevant question was whether the complaint adequately alleged that the service provider "was an independent third party hired to eavesdrop on [the defendant]'s communications, or whether [the third party] was merely a tool [] used to record its own communications with plaintiff." *Id.* The court found that plaintiff's "limited allegations" that the defendant "deployed [] recording software only on [the defendant's] website" and that the recordings "were stored and accessed on [the defendant's] servers" did not sufficiently allege that the service provider did anything other than provide a recording service to the defendant website operator. *Id.* The court reached this conclusion because the complaint lacked any factual allegations

Fenwick & West LLP
Attorneys at Law

that the service provider used the data itself and failed to state whether, and how, the service provider "affirmatively engages with [the] data in any way other than to store it." *Id.*

On the other hand, *Javier's* test, which would hold that any service provider that has the "capability" to use recordings for its own purposes is an eavesdropper would criminalize broad swaths of cloud computing services that businesses rely on to provide services to and communicate with their customers, such as website hosting, email communications, chat communication, and data storage. By this standard, a cloud computing service provider that stores the photos that users of a photo sharing and storage service send through and store on the service would potentially be an eavesdropper. Indeed, it is hard to think of any software-as-a-service or cloud computing service that would not be an eavesdropper under *Javier's* "capability" test.

Regardless of the test that is used, Plaintiffs have not alleged any facts supporting a plausible inference that Invoca has used or is capable of using customer calls to AT&T for any purpose other than for AT&T's use and benefit. To the extent the scant allegations reflect anything, they show that Invoca is a service provider that provides a customer service tool to AT&T. Am. Compl. ¶¶ 1, 3. Plaintiffs have alleged that "AT&T employs Invoca to perform such recordings and analysis for the purpose of more effectively promoting their own products to current and potential customers" and that "[s]uch insights include allowing Invoca's customers to 'measure call quality, intent, and outcomes, transforming conversations into actionable data.'" (emphasis added). *Id.* ¶¶ 3, 22.

These allegations do not come close to alleging Invoca's actual use of intercepted or recorded communications for its own purposes under the test applied in *Graham, Byers*, and *Cody*. In *Graham*, the defendant used a service provider's website session recording software-as-a-service to record its website visitors' interactions with its site. *Graham*, 533 F. Supp. 3d at 828. The court dismissed the

plaintiff's CIPA claim because the service was only a "vendor" that "provide[d] a tool . . . that allow[ed] [a client] to record and analyze its own data." *Id*. at 832-33. Because the complaint did not allege that the vendor made independent use of the recorded information, it was a mere extension of the website operator. *Id.* As in *Graham,* Invoca was merely operating as a tool for AT&T to communicate with its own customers. *Id.* at 832-33 ("Unlike NaviStone's and Facebook's aggregation of data for resale, there are no allegations here that FullStory intercepted and used the data itself."); *see also Williams*, 2022 WL 17869275, at *3 (distinguishing between vendors that use client data for separate business purposes versus those that use it solely in their capacity as a service provider).

These allegations also fail to satisfy *Javier's* narrower "capability to use" test. Courts applying that test have found that similar allegations that service providers that receive and record communications for the benefit of the customer do not have the capability to use those communications for their own purposes, absent factual allegations that rise above mere conclusions. In *Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025 (S.D. Cal. 2024), for example, the court dismissed CIPA Section 631(a) claims based on a website's alleged use of a third-party chat service provider through which customers' chat communications to the business were routed and recorded. Like here, the plaintiff in *Jones* alleged that the plaintiff's communications "are first routed through [the service provider's] server enabling [the service provider] to 'analyze, interpret, and collect customer-support agent interactions in real time to create live transcripts of communications as they occur.'" *Id*. at 1035. The court found that that allegation "only supports the inference that [the service provider] receives and stores communications for the benefit of its client." *Id*. The plaintiff further alleged that the service provider created a proprietary score for each customer "based on the degree to which [the service provider's] AI thinks (1) they are interested in buying Defendant's product or service and (2) their goals can be accomplished with Defendant's product or service." *Id.* The court also found that

FENWICK & WEST LLP
ATTORNEYS AT LAW

these allegations were for the service provider's website customer's benefit and use and that the allegations the service provider could use the communications for its own use were conclusory. *Id.*

Similarly, in *Yockey v. Salesforce, Inc.*, the court found that similar allegations against a service provider that routed and recorded chat communications between websites and their visitors were insufficient to state claims under CIPA Section 631. 688 F. Supp. 3d 962, 973 (N.D. Cal. 2023). Like here, the *Yockey* plaintiff alleged that the service provider's software analyzed the customer-support agent interactions in real time to create live chat transcripts. *Id.* at 968. As in *Jones*, the *Yockey* court found that this allegation did not support "a reasonable inference that Salesforce has the capability to use these communications for any purpose other than furnishing them to [Salesforce's customer]." *Id.* at 973.

Plaintiffs' amended complaint similarly lacks factual allegations of Invoca's capability to use Plaintiffs' communications for its own purposes. While the amended complaint incants the word "capability" four times, it does so in only a conclusory fashion, as in *Jones*. The only Invoca service the amended complaint alleges any facts supporting a plausible inference that AT&T uses is call recording. The amended complaint is otherwise devoid of any factual allegations to support an inference that Invoca can or does use the recordings for its own purposes that are independent of servicing its customers. Instead, throughout the amended complaint, Plaintiffs allege that Invoca can provide various services from customer communications for its customers' use. *See, e.g.,* Am. Compl. ¶ 3 ("AT&T employs Invoca to perform such recordings and analysis for the purpose of more effectively promoting their own products to current and potential customers"); ¶ 22 ("Such insights include allowing *Invoca's customers* to 'measure call quality, intent, and outcomes, transforming conversations into actionable data.'") (emphasis added); ¶ 23 (Signal AI Studio allows *"Invoca customers* […] *to* use such data to 'make smarter marketing optimizations to drive more high-value phone leads at a lower

FENWICK & WEST LLP
ATTORNEYS AT LAW

cost' and utilize the Invoca product suite to further 'track contact center agent performance and call handling across multi-location businesses, aiding in the coaching process'") (emphasis added); ¶ 30 ("This granular level of analysis by Invoca provided unprecedented insight into the content of the calls into AT&T's customer service line and *allowed AT&T* to more effectively market and sell products.") (emphasis added). All of these allegations speak to the capabilities of how Invoca's customers can use Invoca's software to process recorded calls, not capabilities that Invoca can use for its own purposes.

Plaintiffs' reliance on Invoca's Security, Compliance, and Data Privacy Policy (the "Policy") to argue that Invoca is capable of using their recorded calls for Invoca's own purposes is both conclusory and wrong. First, the amended complaint nowhere alleges that AT&T agreed to the Policy, rather than negotiating an agreement for its own use. Second, the amended complaint misleadingly quotes the Policy, alleging that Invoca "can perform comprehensive analysis on the content of the calls it eavesdrops upon, including identifying the category of the speaker and determining the intent of the call, hence why Invoca 'stores calls and call transcripts for internal queries.'" Am. Compl. ¶ 26. The quoted language includes no such data use provision. *See* Declaration of Tyler G. Newby ("Newby Decl."), Ex. A (https://www.invoca.com/data-privacy-security-compliance) at 5. Instead, Plaintiffs allege Invoca performs the analysis for the benefit of its customers. *See e.g.*, Am. Compl. at ¶ 22 ("Such insights include allowing *Invoca's customers* to 'measure call quality, intent, and outcomes, transforming conversations into actionable data.'") (emphasis added).

The amended complaint's selective quotations from another one of Invoca's online policies, Invoca's Privacy Policy, are also misleading. Plaintiffs allege that the Privacy Policy states Invoca uses call information "'including phone numbers and recordings'—to 'improve, operate, maintain, and, in some cases, market the Invoca Platform' and 'conduct internal research in order to enhance the Invoca

Platform and Services.'" Am. Compl. ¶ 27. But the Privacy Policy makes clear that "your calls to us, including phone numbers and recordings" refers to "when you interact with our website or call us," *not* when Invoca records a call to an Invoca customer. Newby Decl., Ex. B (https://www.invoca.com/privacy-policy) at 3. The Privacy Policy distinguishes calls made directly to Invoca from "Categories of information collected from or on behalf of our Clients," which "may include the content of recorded telephone calls." *Id.* at 5. For those recordings, which are the subject of the amended complaint, the Privacy Policy makes clear that "[o]ur clients control this Personal Data and its collection and use are governed by their respective privacy policies, which may differ from Invoca's policy." *Id* at 6.

Under any standard, the amended complaint fails to state a claim under CIPA Section 631(a) and should be dismissed with prejudice.

**2. Plaintiffs' Section 632(a) Claims Fail—Count II.**

Plaintiffs' second cause of action alleges that Invoca recorded their calls to AT&T without consent, in violation of CIPA Section 632. That section prohibits the intentional use of any "electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication." Cal. Pen. Code § 632(a). The party "bringing a CIPA claim has the burden to prove that the defendant lacked consent to record." *Reyes v. Educ. Credit Mgmt. Corp.*, 773 F. App'x 989, 990 n.1 (9th Cir. 2019). Plaintiffs fail to plead both absence of consent and that they had an expectation of privacy in their calls.

Plaintiffs do not allege they received no notice of recording when they called AT&T. Instead, they allege they did not know that Invoca, rather than AT&T, was recording their calls. Am. Compl. ¶ 38 ("[N]or did they have any reason to suspect that call recording, transcription, and analysis were being provided by a third party, Invoca, rather than AT&T.") (emphasis added). Thus, Plaintiffs knew they were being recorded, but they hinge their amended complaint on an allegation that they did not know *who* was recording them. By continuing with the call despite

knowing—and expecting—that it would be recorded by someone, Plaintiffs consented to the recording, regardless of who was conducting it. Plaintiffs' consent to the recording of their calls is fatal to their claim that those calls were confidential. *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776–77, 41 P.3d 575 (2002) ("[A] conversation is confidential under Section 632 if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded."). Plaintiffs' consent to their call being recorded forecloses their CIPA Section 632 claims, which should be dismissed with prejudice.

**3. Plaintiffs' Section 637.5 Claims Fail—Count III.**

In their third cause of action, Plaintiffs allege that Invoca violated CIPA Section 637.5, which prohibits a person "who owns, controls, operates, or manages a satellite or cable television corporation, or who leases channels on a satellite or cable system," from using "any electronic device to record, transmit, or observe any events or listen to, record, or monitor any conversations that take place inside a subscriber's residence, workplace, or place of business, without obtaining the express written consent of the subscriber." Cal. Pen. Code §§ 637.5(a), 637.5(a)(1). "Any person receiving subscriber information from a satellite or cable television corporation shall be subject to the provisions of this section." *Id.* § 637.5(h).

CIPA Section 637.5 does not apply to Invoca because the amended complaint does not allege that Invoca owns, controls, operates, or manages a satellite or cable company. Even if that section were to apply to AT&T, Plaintiffs allege that Invoca is a separate and distinct entity from that company. *See* Am. Compl. ¶ 85. Additionally, Plaintiffs do not allege that Invoca received subscriber information or what subscriber information Invoca allegedly received. Rather, Plaintiffs allege in a conclusory fashion that "Invoca listened, recorded, and/or otherwise monitored Plaintiffs and the other Class and Subclass members' conversations with AT&T that took place inside their residence, workplace, or place of business when they called AT&T's contact centers." Am. Compl. ¶ 86. But Plaintiffs do not allege what

FENWICK & WEST LLP
ATTORNEYS AT LAW

specific information Invoca purportedly listened to, recorded, or monitored, nor do they allege that any such information would qualify as subscriber information. At best, Plaintiffs simply recite the elements of CIPA causes of action but fail to allege any facts suggesting that Invoca violated Section 637.5. The Section 637.5 claims should be dismissed with prejudice.

### C. Plaintiffs' Nationwide CIPA Claims Should Be Stricken Under Rule 12(f) Or, In The Alternative, Dismissed Under Rule 12(b)(6).

Choice-of-law principles preclude Plaintiffs' nationwide CIPA claims. The Ninth Circuit has held that variations in state law pose insurmountable problems for proposed "nationwide" claims premised on alleged violations of state law like Plaintiffs' alleged nationwide CIPA class claims. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589-94 (9th Cir. 2012) (holding that the district court erred because it erroneously concluded that California law could apply to the entire nationwide class), *overruled on other grounds by Olean Wholesale Grocery Corp. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022). California law may be applied on a classwide basis only if "the interests of other states are not found to outweigh California's interest in having its law applied." *Id. at* 590. California courts apply a three-step governmental interest test to determine whether the interests of other states outweigh California's interest. The court must first determine whether the law of the other state is materially different from California law. *Id.* Second, if there are differences, the court determines whether the other state has an interest in having its law applied. *Id.* Third, if another state has an interest, the court determines which state's interest would be most impaired if its policy were subordinated to the law of another state. *Id.*

Application of CIPA on a nationwide basis does not meet the governmental interest test. Plaintiffs purport to assert their California CIPA claims on behalf of a nationwide class of "all United States residents who, within the applicable statute of limitations period, called AT&T's customer service line and whose conversations

FENWICK & WEST LLP
ATTORNEYS AT LAW

with AT&T were intercepted and recorded by Invoca." Am. Compl. ¶ 47. At the first step, every state has adopted legislation regarding the propriety of recording its own citizens' calls, and there are material differences between CIPA and the wiretapping statutes of the other 49 states. For example, some states require only single party consent, while CIPA requires consent of all parties. There are also material differences in the remedies given by state laws, as the amount of damages varies from state to state, and some states allow for injunctive relief while others do not. At the second step, every state has an interest in applying its own laws. *See, e.g., Mazza*, 666 F.2d. at 593 ("[E]ach foreign state has an interest in applying its law to transactions within its borders," which means that "if California law were applied to [a nationwide class], foreign states would be impaired in their ability to calibrate liability to foster commerce."); *In re Yahoo Mail Litig.,* 308 F.R.D. 577, 603 (N.D. Cal. 2015) (holding that each state has an interest in applying its own wiretapping statutes); *Erceg v. LendingClub Corp.,* 475 F. Supp. 3d 1071, 1078 (N.D. Cal. 2020) (similar). At the final step, courts have found that "other states' interests would be most impaired by applying California law to non-Californian class members." *Yahoo,* 308 F.R.D. at 603; *see also Mazza*, 666 F.3d. at 594 ("California's interest in applying its law to residents of foreign states is attenuated."). While *Mazza* was decided at the certification stage, courts apply the same analysis at the motion to dismiss stage. *See Vinci v. Hyundai Motor Am.*, No. 17-0997, 2018 WL 6136828, at *7-10 (C.D. Cal. Apr. 10, 2018) (dismissing nationwide claims at the pleading stage); *Cover v. Windsor Surry Co.*, No.14-cv-05262-WHO, 2016 WL 520991, at *5 (N.D. Cal. Feb. 10, 2016) ("*Mazza* is not only relevant but controlling, even at the pleading phase.") (citation modified); *Davison v. Kia Motors Am., Inc.*, No. SACV 15-00239-CJC(RNBx), 2015 WL 3970502, at *3 (C.D. Cal. June 29, 2015) (dismissing "nationwide" claims at pleading stage).

Plaintiffs' nationwide allegations should be stricken based on the material differences in state law, each state's interests in applying its own laws, and each

FENWICK & WEST LLP
ATTORNEYS AT LAW

state's impaired ability to apply its own law to calls and recordings within its borders.

### D. Because The Court Should Strike Plaintiffs' Nationwide CIPA Claims, It Should Also Find That The Amended Complaint Does Not Adequately Plead CAFA Jurisdiction.

Plaintiffs assert subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). "CAFA gives federal courts jurisdiction over certain class actions, defined in § 1332(d)(1), if the class has more than 100 members, any class member is a citizen of a state different from any defendant, and the amount in controversy exceeds $5 million." *Halliday v. Panda Rest. Grp., Inc.*, No. 2:24-cv-05322-SVW-BFM, 2024 WL 3739163, at *1 (C.D. Cal. Aug. 9, 2024) (finding no minimal diversity when "all members of this putative class are, by definition, citizens of California, [and] the entire class shares the same citizenship as [defendant]"); *see also Diva Limousine, Ltd. v. Uber Techs., Inc.*, 392 F. Supp. 3d 1074, 1082 (N.D. Cal. 2019) (dismissing complaint for lack of subject matter jurisdiction where no minimal diversity existed under CAFA). Under CAFA, "[m]inimal diversity exists where 'any member of a class of plaintiffs is a citizen of a State different from any defendant.'" *Id.* (quoting 28 U.S.C. § 1332(d)(2)(A)); *see also Bate*, 2024 WL 3928892, at *1.

#### 1. There Does Not Appear To Be Minimal Diversity.

Absent the nationwide claims, the amended complaint raises questions as to whether minimal diversity exists. Plaintiffs are all residents and citizens of California. Am. Compl. ¶¶ 7-10. Plaintiffs seek to represent a class of "all California residents who, within the applicable statute of limitations period, called AT&T's customer service line while in California and whose conversations with AT&T were intercepted and recorded by Invoca." *Id.* ¶ 47. The putative class members they seek to represent are California residents. Invoca is a Delaware corporation with its principal place of business in California. *Id.* ¶ 9. Invoca is therefore a citizen of California and Delaware. 28 U.S.C. §1331(c)(1). Absent the nationwide claims, the

amended complaint does not plead any facts that some members of the putative class are not California citizens, even if they are residents. Absent minimal diversity, the Court lacks subject matter jurisdiction. *See Bate*, 2024 WL 3928892, at *1 (dismissing complaint where plaintiffs, class members, and defendant were citizens of California); *Marroquin v. Wells Fargo, LLC*, No. 11cv163-L BLM, 2011 WL 476540, at *2 (S.D. Cal. Feb. 3, 2011) (same). Without the requisite minimal diversity under CAFA, the Court should dismiss this action for lack of subject matter jurisdiction. *See e.g., Bate*, 2024 WL 3928892, at *1 (granting motion to dismiss where plaintiffs, class members, and defendant were citizens of California); *Alonzo v. Saddle Ranch Holdings, LLC*, No. CV 21-06630-CJC (JCx), 2021 WL 10378013, at *4 (C.D. Cal. Oct. 7, 2021) (same).



### 2. Plaintiffs Have Not Alleged Any Facts To Suggest That CAFA's Exceptions Do Not Apply.

Absent a nationwide class, this case is a local controversy that is not subject to CAFA jurisdiction. Under CAFA's home-state controversy exception, "[a] district court shall decline to exercise jurisdiction" where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). And under CAFA's local controversy exception, a "'district court shall decline to exercise jurisdiction' over a class action in which the plaintiff class and at least one defendant meet certain characteristics that essentially make the case a local controversy." *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1022 (9th Cir. 2007). This applies where:

> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>
> (II) at least 1 defendant is a defendant—
>
> > (aa) from whom significant relief is sought by members of the plaintiff

class;

(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

(cc) who is a citizen of the State in which the action was originally filed; and

(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.

28 U.S.C. § 1332(d)(4)(A).

Absent a nationwide class, both home-state controversy exceptions to CAFA apply, given that all named plaintiffs and Invoca are California citizens, Plaintiffs' alleged injuries result from alleged conduct that occurred in California, and the case is pending in California. *See* Am. Compl.¶ 6.

## CONCLUSION

For the foregoing reasons, Invoca respectfully requests that the Court dismiss the amended complaint with prejudice.

Dated: July 28, 2025

FENWICK & WEST LLP

By: */s/ Tyler G. Newby*
Tyler G. Newby
Attorneys for Defendant, Invoca, Inc.

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Invoca, Inc., certifies that this brief contains 6,616 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 28, 2025

FENWICK & WEST LLP

By: */s/ Tyler G. Newby*
Tyler G. Newby

Attorneys for Defendant, Invoca, Inc.

FENWICK & WEST LLP
ATTORNEYS AT LAW