**McGuire Law, P.C.**
Eugene Y. Turin (State Bar No. 342413)
10089 Willowcreek Road, Suite 200
San Diego, CA 92131
Tel: (312) 893-7002
Fax: (312) 275-7895
eturin@mcgpc.com

*Counsel for Plaintiffs and the Proposed Class and Subclass*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CAROLE WELLS; DONNA MARSHALL; MARTIN VALENCIA; and TANISHA DANTIGNAC individually and on behalf of similarly situated individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>INVOCA, INC.,<br><br>Defendant. | Case No.: 2:25-cv-01323-HDV-BFM<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date: October 30, 2025<br>Time: 10:00 a.m.<br>Dept: Courtroom 5B<br>Judge: Hon. Hernán D. Vera<br><br>Date Action Filed: February 14, 2025 |

**TABLE OF CONTENTS**


**I. INTRODUCTION** ........ 1

**II. STATEMENT OF FACTS** ........ 2

**III. LEGAL STANDARD** ........ 2

**IV. ARGUMENT** ........ 3

**A. Plaintiffs State A Claim Under CIPA § 631** ........ 3

**B. Plaintiffs State A Claim Under CIPA § 632(a)** ........ 7

**C. Plaintiffs State A Claim Under CIPA § 637.5** ........ 9

**D. Defendant's Motion To Strike Or Dismiss Plaintiffs' Nationwide CIPA Claims Is Premature, And Otherwise Fails Because CIPA Applies To Individuals Outside California Where, As Here, Defendant Is A California Entity** ........ 10

**V. CONCLUSION** ........ 13

# TABLE OF AUTHORITIES


**Page(s)**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 2, 3

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
2016 WL 3543699 (S.D. Cal. 2016) .......... 12

*Busby v. Invoca, Inc.*,
No. 24-cv-05542, 2025 WL 822664 (N.D. Cal. 2025) .......... *passim*

*Cahill v. Liberty Mut. Ins. Co*.,
80 F.3d 336 (9th Cir. 1996) .......... 3

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 8

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 8

*Carrese v. Yes Online Inc.*,
2016 WL 6069198 (C.D. Cal. 2016) .......... 12

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) .......... 10, 12

*Doe v. Meta Platforms, Inc*.,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 10, 11, 12

*Gladstone v. Amazon Web Servs., Inc.*,
2024 WL 3276490 (W.D. Wash. 2024) .......... 7

*Heerde v. Learfield Commc'ns, LLC*,
No. 23-cv-04493, 2024 WL 3573874 (C.D. Cal. 2024) .......... 3

*Hertz Corp. v. Friend*,
559 U.S. 77 (2010) .......... 11

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. 2013) .......... 8

*In re Yahoo Mail Litig.*,
308 F.R.D. 577 (N.D. Cal. 2015) .......... 10

*Jackson v. LinkedIn Corp.*,
2024 WL 3823806 (N.D. Cal. 2024) .......... 6

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ........................................ 3, 6

*Kauffman v. Papa John's Int'l, Inc.*,
No. 22-cv-1492, 2024 WL 171363 (S.D. Cal. 2024) ........................................ 4

*Kellman v. Spokeo, Inc.*,
599 F. Supp. 3d 877 (N.D. Cal. 2022) ........................................ 10, 11

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ........................................ 10

*Oman v. Delta Air Lines, Inc.*,
889 F.3d 1075 (9th Cir. 2018) ........................................ 12

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ........................................ 5

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) ........................................ 5

*Roney v. Miller*,
705 F. App'x 670 (9th Cir. 2017) ........................................ 13

*Schmitt v. SN Servicing Corp.*,
2021 WL 3493754 (N.D. Cal. 2021) ........................................ 12

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) ........................................ 6

*Tate v. Vitas Healthcare Corp*,
24-cv-01327, 2025 WL 50447 (E.D. Cal. 2025) ........................................ 1, 5, 6, 7, 9

*United States v. United Healthcare Ins. Co.*,
848 F.3d 1161 (9th Cir. 2016) ........................................ 13

*Valentine v. NebuAd, Inc.*,
804 F. Supp. 2d 1022 (N.D. Cal. 2011) ........................................ 11

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962, 972 (N.D. Cal. 2023) ........................................ 6

**<u>Statutes and Court Rules</u>:**

Cal. Penal Code §§ 630 *et seq.* ........................................ *passim*

## I. INTRODUCTION

The California Legislature enacted the California Invasion of Privacy Act, Cal. Penal Code §§ 630 *et seq*. (the "CIPA"), to safeguard the privacy rights of its citizens. In doing so, the Legislature explicitly acknowledged that "the development of new devices and techniques for the purpose of eavesdropping upon private communications . . . has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Cal. Penal Code § 630.

Defendant's invasive conduct as alleged in Plaintiffs' First Amended Class Action Complaint ("Amended Complaint" or "FAC," Dkt. 19) directly conflicts with the California legislature's mission to safeguard its citizens' rights to privacy. To that end, Invoca offers its software-as-a-service conversation intelligence technology to its customers in order to provide them various customer and cell center services. In doing so, Invoca records the conversations of its customers' callers, transcribes it, then feeds it to its own internal artificial intelligence. The captured information is eventually delivered back to Invoca's customers, such as AT&T, but Invoca keeps and utilizes the recordings of conversations for its own independent use and purposes without the consent of any of the subjects who have been recorded. Such conduct is in direct violation of CIPA.

As a result of the foregoing, Plaintiffs filed their Amended Complaint seeking redress for Defendant's intentional infringement of their undisputed privacy rights. However, rather than making amends with Plaintiffs and the putative Class, Defendant filed its recycled Motion to Dismiss ("Motion," Dkt. 20), taking a ***third*** bite of the apple repeating several arguments that recently failed in the analogous *Busby v. Invoca, Inc.*, which asserted the same causes of action for Defendant's use of the same software (No. 24-cv-05542-JC, 2025 WL 822664 (N.D. Cal. Mar. 14, 2025)); and *Tate v. Vitas Healthcare Corp*, another CIPA case based on the same Invoca software at issue here. No. 2:24-cv-01327-DJC-CSK, 2025 WL 50447 (E.D. Cal. Jan. 8, 2025). Therefore, Defendant cannot feign surprise that its arguments once again lack merit. For the reasons set forth herein, and in *Busby* and *Tate*, Plaintiffs respectfully request that this Court deny Defendant's Motion in its entirety.

## II. STATEMENT OF FACTS

Invoca operates a conversation intelligence software-as-a-service to analyze phone conversations at scale and unlock insights. (FAC, ¶ 22.) Its broad suite of products are aimed at call recordings and transcriptions that allow its customers, like AT&T, to measure call quality, intent, and outcomes transforming conversations to actionable data. (*Id.*) Utilizing its products, when a customer places a call with one of the customer service agents of AT&T, Invoca effectively eavesdrops upon, extracts data from, and analyzes conversations to which it is not a party. (*Id.* at ¶¶ 25, 30–31.) Invoca then analyzes the data, which it has the capability to use the contents of the conversations it collects for its own purposes far beyond simply furnishing recordings to its customers. (*Id.* at ¶¶ 26, 30–31.) For example, Invoca can perform comprehensive analysis on the content of the calls it eavesdrops upon, identifying the category of the speaker and determining the intent of the call. (*Id.*) Invoca even admits its ability to use such data in its Privacy Policy, which discloses that it itself uses call information to improve, operate, maintain, and, in some cases, market the Invoca Platform and conduct internal research in order to enhance the Invoca Platform and Services. (FAC, ¶¶ 27–28.)

Plaintiffs are AT&T customers who called AT&T's customer service line within the relevant time period. (*Id.* at ¶¶ 34–38.) When Plaintiffs placed their calls to AT&T, Invoca eavesdropped on Plaintiffs' entire conversations and in real time performed AI analysis on the content of the calls. (*Id.* at ¶ 39.) Such analysis included capturing Plaintiffs' intent and/or reason for calling, service interests, conversion outcome, and tracking the words and phrases they said during the conversations. (*Id.*) Plaintiffs were never informed that Invoca was recording or eavesdropping on their calls to AT&T's customer service nor did they provide authorization to do so. (*Id.* at ¶ 40.) Therefore, Invoca failed to procure the required consent to engage in the alleged conduct in Plaintiffs' Amended Complaint. (*Id.* at ¶ 41.) As result, Plaintiffs have had their privacy rights invaded and been exposed to the risks and harmful conditions created by Invoca's violations of CIPA. (*Id.* at ¶ 43.)

## III. LEGAL STANDARD

A complaint must plead sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The court must accept all

factual allegations pled in the complaint as true and must construe them and draw all reasonable inferences in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.[1]

## IV. ARGUMENT

### A. Plaintiffs State A Claim Under CIPA § 631.

CIPA § 631 aims to hold any entity liable where it (1) "by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection with . . . any telegraph or telephone wire, line cable, or instrument"; (2) :willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit"; and (3) "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained[.]" *Heerde v. Learfield Commc'ns, LLC,* No. 2:23-cv-04493-FLA (MAAx), 2024 WL 3573874, at *4 (C.D. Cal. July 19, 2024) (quoting *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 897 (N.D. Cal. 2023)). Here, Plaintiffs plainly state a claim under the statute.

First, Plaintiffs plausibly allege that Defendant's call tracking services are a "machine, instrument, contrivance, or. . . other manner," and through its services, Defendant "violated . . . CIPA . . . by intentionally tapping, electrically or otherwise, the lines of telephone communication between Plaintiffs and Class Members, on one hand, and AT&T, on the other hand." (FAC, ¶¶ 56, 59.) Plaintiffs further allege that Defendant "reads, learns, monitors, and otherwise intercepts the content of [their] communications" with AT&T (*id.* at ¶ 31) and that its services "automatically analyze phone conversations[,]" and "provides a searchable database of every call recording and transcript" and "stor[es] it in Invoca as structured, actionable data[,]" all of which are done without the authorization

---

[1] Defendant also moves to dismiss Plaintiff Marshall's claims for lack of standing under Rule 12(b)(1) because it purportedly does not have any record of having interacted with her. (Motion at 6.) Because the other named representatives' claims are all substantially similar and rely on the same core facts, for judicial efficiency purposes, Plaintiffs concede to the dismissal of Plaintiff Marshall's claims without prejudice and proceed with the remaining representatives.

of Plaintiffs. (FAC, ¶¶ 22–24, 30, 33.) Lastly, Plaintiffs allege that Defendant used the information obtained from the contents of their communications with AT&T for numerous purposes, including to "enhance Invoca Platform and Services." (*Id.* at ¶¶ 25–28.) Plaintiffs have therefore adequately alleged a violation of CIPA § 631(a).

In its Motion, Defendant's sole argument for dismissal is that Plaintiffs' fail to allege that Invoca is a third party that makes independent use of the recorded calls. (Motion at 7.) In other words, Defendant is arguing that it is a party to the communication and thus it is incapable of intercepting communications. (*Id.*) ("the central question . . . is whether Invoca . . . is merely an extension of AT&T"). Defendant's argument fails as it is premature, and the Northern District of California has already disagreed with Defendant's self-interested characterization of its relationship with its customers.

To start, numerous courts have held that determining whether an analytics provider like Defendant is a party to the communication or a third-party eavesdropper is a question of fact not suitable for determination on a motion to dismiss. *See Kauffman v. Papa John's Int'l, Inc.*, No. 22-cv-1492-L-MSB, 2024 WL 171363, at *7 (S.D. Cal. Jan. 12, 2024) ("Whether FullStory acts akin to a tape recorder or whether its actions are closer to 'an eavesdropper standing outside the door' is a question of fact which is better answered after discovery into the session replay technical context of the case"); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021) ("The question thus becomes, in analogue terms: is Quantum Metric a tape recorder held by Lululemon, or is it an eavesdropper standing outside the door? This is a question of fact for a jury, best answered after discovery into the storage mechanics of Session Replay"); *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 942 (S.D. Cal. 2024) (same). Therefore, this question should be resolved at a more appropriate stage of the litigation.

Next, Defendant recycles its previously rejected argument from *Busby v. Invoca*, an analogous case from the Northern District of California, that it is "merely an extension of DISH and DirectTV." 2025 WL 822664, at *1. There, the court disagreed with Defendant's self-characterization as an extension of its customers, holding that the plaintiffs' allegations that "Invoca is a separate legal entity

from DISH and DirecTV, and that DISH and DirecTV are Invoca's customers[;]" that "Invoca recorded conversations between plaintiffs and DISH and DirecTV in which Invoca was not a party[;] and that "Invoca expressly claims the right to independently use data from the calls its recorded to 'market' and 'enhance' its own services" were sufficient to survive Invoca's motion to dismiss. *Busby*, 2025 WL 822664, at *1. The court also explicitly rejected Invoca's assertion that this situation is akin to *Rogers v. Ulrich* where the defendant "recorded their own conversations[,]" which Defendant also relies on in making its argument here. *Id. See Rogers v. Ulrich*, 52 Cal. App. 3d 894 (1975). In doing so, the court in *Busby* stated that the plaintiffs "have plausibly alleged that Invoca, a third party, eavesdropped and secretly monitored the conversations plaintiffs had with DISH and DirecTV . . . [which] is prohibited by [§] 631(a)." *Busby*, 2025 WL 822664, at *1; *see also Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985).

Here, Plaintiffs' FAC is directly analogous to *Busby* and thus, their § 631 claims must survive. Plaintiffs allege that "Invoca is a separate legal entity from AT&T that offers software-as-a-service and not merely a passive device"; that Invoca "intentionally tapp[ed], electrically or otherwise, the line of telephone communications between Plaintiffs and Class Members, on one hand, and AT&T, on the other hand"; "that Invoca "willfully and without the consent of all parties to the communication, or in any authorized manner, read[] or attempt[ed] to read or learn the contents of electronic communications between Plaintiffs and Class Members, on the one hand, and AT&T, on the other hand"; and that "Invoca also used its services to obtain information for its own independent purposes entirely unrelated to AT&T operations." (FAC, ¶¶ 57, 59, 64.)

Furthermore, and in direct contrast with Defendant's assertions, it is irrelevant whether Defendant "makes independent use of recorded calls" between consumers and AT&T. (Motion at 7.) Indeed, the Eastern District of California rejected a substantially similar argument in another CIPA case concerning Invoca's same technology at issue here, and recognized that "Section 631(a)'s text . . . does not actually contain a use requirement." *Tate v. Vitas Healthcare Corporation*, 2025 WL

50447, at *4 (citing *Javier*, 649 F. Supp. 3d at 899-900).[2] "In other words, an entity can violate the statute by learning the contents of the message *or* by using information obtained from listening in on a conversation." *Tate*, 2025 WL 50447, at *4. The *Tate* court therefore found "it unnecessary to consider a third party's intention to collect or use data from a call" and held that "[o]btaining that data while reserving the capability to utilize it makes a third party distinct from one of the parties to the call and may trigger a violation of section 631(a)." *Id.*; *see* (FAC, ¶ 26) ("Invoca has the capability to use the contents of conversations it collects through its product offerings for its own purposes and purposes beyond simply furnishing recordings to its customers"). Thus, Defendant's argument that "the complaint fails to allege facts sufficient to show that Invoca is a third party that makes independent use of recorded calls" does not defeat Plaintiffs' CIPA claim. (Motion at 7.)

Nonetheless, even if this Court were to require that Invoca has its own independent use for the information it intercepts, Plaintiffs allege that such conduct occurs. As referenced above, Invoca explicitly mentions in its own Privacy Policy that it uses "Personal Data . . . including phone numbers and recordings . . . to improve, operate, maintain, and in some cases, market the Invoca Platform and conduct internal research in order to enhance the Invoca Platform and Services." FAC, ¶ 27; *see Jackson v. LinkedIn Corp.*, 2024 WL 3823806, at *5 (N.D. Cal. Aug. 13, 2024) (finding violation of CIPA § 631 where "LinkedIn received this sensitive data and read and used it for its own marketing services"); *Javier*, 649 F. Supp. 3d at 900; *see also Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 972–73 (N.D. Cal. 2023) (agreeing with *Javier* that the question is whether the third party has the capability to use its record of the interaction, regardless of the third party's specific intent); *Smith v. Google, LLC,* 735 F. Supp. 3d 1188 (N.D. Cal. 2024) (rejecting argument that Google was a mere

[2] *See also id.* ("In weighing the plaintiff's section 631(a) claim, the *Javier* court critiqued [the argument] that a third-party software developer would need to use the data for its own purposes in order for it to violate section 631(a). The *Javier* court noted that there is already a use requirement in one of section 631(a)'s discrete clauses ('us[ing], or attempt[ing] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained'), and therefore it would be improper to impute that use requirement to all of section 631(a). The court in that case also noted that … to consider a third party's intent in obtaining data here would similarly be improper. The Court finds *Javier*'s reasoning to be [] persuasive.") (internal citations omitted) (citing, *inter alia*, *Javier*, 649 F. Supp. 3d at 900).

"vendor" where Google read and used the analytics data by: (1) using the data to power its algorithms; (2) gaining detailed information about its users; and (3) collecting and aggregating the data to present to its customers on a dashboard); *Gladstone v. Amazon Web Servs., Inc.*, 2024 WL 3276490, at *6 (W.D. Wash. July 2, 2024) ("Plaintiff's allegations demonstrate that Defendant has capabilities beyond that of a mere tape recorder, and there is no evidence that Defendant is incapable of using the data for any other purpose").

Accordingly, this Court should follow *Tate*'s and *Busby*'s lead where Invoca, via its software, was determined to be a third party, distinct from both the plaintiffs and the respective customers. *See Tate*, 2025 WL 50447, at *5; *Busby*, 2025 WL 822664, at *1. As those two courts have already examined Defendant's argument and squarely rejected it, Defendant's Motion with respect to § 631 should be denied.

### B. <u>Plaintiffs State A Claim Under CIPA § 632(a).</u>

Cal. Penal Code § 632(a) states, in pertinent part:

> (a) A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500) per violation ….

Further, Cal. Penal Code § 632(c) defines "confidential communication" as:

> any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, executive, or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.

Plaintiffs state a claim under Cal. Penal Code § 632(a) because Defendant, without Plaintiffs' consent, eavesdropped on Plaintiffs' and Class members' confidential phone communications with AT&T. As Plaintiffs plainly allege, Invoca's call tracking services are an "electronic amplifying or recording device" that it used to "record the confidential communications of Plaintiffs' and Class

members'" with AT&T. (FAC, ¶¶ 70, 71.) Such conversations were confidential as they "entail discussions of financial information for payment processing, and other forms of information required for the purposes of identity verification." (*Id.* at ¶ 72.) Plaintiffs had a reasonable expectation of privacy when communicating with AT&T because they were communicating sensitive information and did not expect that, nor did they provide consent to, the unknown third party Invoca would be recording such confidential communications. (*Id.* at ¶¶ 73, 74.) Thus, Plaintiffs' allegations are sufficient at this stage of the litigation.

Defendant again recycles a nonsensical, previously rejected, argument that "Plaintiffs fail to plead both absence of consent and that they had an expectation of privacy in their calls." (Motion at 14.) Both are wrong.

As an initial matter, Cal. Penal Code § 632 states that "confidential communication means any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto." Plaintiffs plainly have alleged as such as they allege conveying sensitive information and that they "reasonably expected the conversations would only be between themselves and the AT&T contact center agent. (FAC, ¶¶ 38, 73, 74); *see Busby,* 2025 WL 822664, at *1 ("that expectation does not encompass Invoca").

Furthermore, in addition to explicitly pleading that they did not consent to the conduct at issue (*see* FAC ¶¶ 5, 33, 40, 74), Plaintiffs could not have possibly provided consent because Defendant did not "explicitly notify" Plaintiffs of the practice at issue. (*See Id.* at ¶ 32) ("both Invoca and AT&T fail to inform consumers, prior to any recording, that Invoca is listening in on consumers' communications with AT&T, including that the content of their communications with AT&T are being recorded and analyzed by a third party"); *see also Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021) ("In order for consent to be actual, the disclosures must 'explicitly notify' users of the practice at issue"). Furthermore, even if Defendant's assertion that Plaintiffs knew they would be recorded by *someone* were true, though it is not, such knowledge does not defeat the fact that explicit notification is required in this context. *See In re Google Inc.*, 2013 WL 5423918, at *13 (N.D. Cal. Sept. 26, 2013) ("Google points to its Terms of Service and Privacy Policies, to which all

Gmail and Google Apps users agreed, to contend that these users explicitly consented to the interceptions at issue. The [c]ourt finds, however, that those policies did not explicitly notify plaintiffs that Google would intercept users' emails for the purposes of creating user profiles or providing targeted advertising"); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) ("However, as discussed above in the context of express consent, any consent with respect to the processing and sending of messages itself does not necessarily constitute consent to the specific practice alleged in this case—that is, the scanning of message content for use in targeted advertising"). Therefore, as resolved by *Tate* and *Busby*, Plaintiffs did not consent to Invoca's interception of their calls as a matter of law. *See Tate*, 2025 WL 50447, at *1 ("Neither VITAS nor Invoca obtain the consent of any caller to VITAS's call center …."); *Busby,* 2025 WL 822664, at *1 ("these disclosures did not request or obtain plaintiffs' consent for Invoca to record the calls in the manner alleged"). Accordingly, Defendant's Motion with respect to § 632 must be similarly denied.

### C. Plaintiffs State A Claim Under CIPA § 637.5.

Defendant contends that CIPA's § 637.5 does not apply because the amended complaint does not allege that Invoca owns, operates, or manages a satellite or cable company, nor that it receives subscriber information from one. (Motion at 15.) Further, Defendant argues that any allegation that Invoca violated § 637.5 was done in conclusory fashion. *Id*. Defendant is wrong.

Plaintiffs plainly allege that AT&T is a "cable television corporation" and that Defendant, through its "electronic device," "listened, recorded, and/or otherwise monitored Plaintiffs" "conversations with AT&T that took place inside their residence, workplace, or place of business when they called AT&T's contact centers." (FAC, ¶¶ 83, 84, 86.) These allegations plausibly demonstrate that Defendant received subscriber information because given the customer service nature of the calls, Invoca received a myriad of subscriber-based information while servicing customers, including "financial information for payment processing," "information required for the purpose of identity verification" and other granular level content. (*Id.* at ¶¶ 30, 72.) As Defendant's argument was previously rejected in *Busby*, this Court should similarly deny Defendant's Motion regarding § 637.5.

**D. <u>Defendant's Motion To Strike Or Dismiss Plaintiffs' Nationwide CIPA Claims Is Premature, And Otherwise Fails Because CIPA Applies To Individuals Outside California Where, As Here, Defendant Is A California Entity.</u>**

Defendant, once again, recycles its previously rejected argument from *Busby* that "[c]hoice-of-law principles preclude Plaintiffs' nationwide CIPA claims." (Motion at 16.) However, the *Busby* court and another court in the Northern District of California in *Doe v. FullStory, Inc.* acknowledged, this argument is "premature [at the motion to dismiss stage], and better determined on class certification or summary judgment." 712 F. Supp. 3d 1244, 1257 (N.D. Cal. 2024); *Busby*, 2025 WL 822664, *2 (denying Defendant's request to strike the nationwide CIPA class claims); *accord Doe v. Meta Platforms, Inc*., 690 F. Supp. 3d 1064, 1079-79 (N.D. Cal. 2023) (rejecting argument that "CIPA does not apply 'extraterritorially,' because CIPA's intent is 'to protect the right of privacy of the people of this state[]'" as "premature" on a motion to dismiss); *see also Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 894 (N.D. Cal. 2022), *motion to certify appeal denied*, 2022 WL 2965399 (N.D. Cal. July 8, 2022) (deferring choice of law analyses until class certification, after discovery shed light on whether defendants' acts had a substantial nexus to California).

Indeed, while "[c]ourts have taken differing approaches to whether and under what conditions similar California statutes apply to residents of other states[,] … [n]otably, they have done so … at class certification, not the pleadings stage." *Kellman*, 599 F. Supp. 3d at 894 (internal citations omitted). This is because discovery is required to "shed light on whether the 'executive decision makers responsible for' these product decisions 'are located in California' and whether the 'processes used to intercept, scan, and store' data may be performed in California, both of which may impact the choice-of-law analysis." *Id*. (citation omitted).

Accordingly, Defendant's reliance on *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589-94 (9th Cir. 2012), and *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 603–04 (N.D. Cal. 2015), in support of its choice-of-law challenge here is misplaced. (*See* Motion at 16, 17) (citing *Mazza* and *Yahoo*). As Defendant acknowledges, *Mazza* was decided "at the certification stage," (*Id*. at 17.) the same is true of *Yahoo*. *See Yahoo*, 308 F.R.D. at 602 (considering choice-of-law issue at class certification). This Court should follow the lead of *Busby, FullStory*, *Meta Platforms*, and *Kellman*, and defer analysis

of the choice-of-law issue until class certification. *See, e.g.*, *Kellman*, 599 F. Supp. 3d at 894 ("This issue will be addressed at class certification"); *Meta Platforms*, 690 F. Supp. 3d at 1079 ("I am not determining or foreclosing any choice-of-law issues. … I am denying the motion to dismiss the CIPA claim based on Meta's exterritoriality argument."); *see also Busby*, 2025 WL 822664, at *2 (same).

Furthermore, Plaintiffs allege a sufficient connection between the alleged conduct and California to permit the extraterritorial application of CIPA to non-California residents. Even assuming the choice-of-law issue were ripe for determination absent any discovery at this early stage (it is not), Plaintiffs allegations plausibly establish that Defendant's unlawful conduct at issue, which affected consumers nationwide, originated from and took place in California, based on the location of Defendant's principal place of business and corporate headquarters in California. (*See* FAC, ¶¶ 11, 65, 75); *see Busby*, 2025 WL 822664, *2 ("[p]laintiffs have alleged that Invoca has its 'principal place of business in . . . California' . . . and that Invoca recorded, transcribed, and analyzed the calls at issue. There is a plausible inference that the challenged conduct took place in California. If Invoca wishes to challenge that assertion as a matter of fact, that will need to be done under a different provision of the Federal Rules of Civil Procedure on a more developed factual record").

In other words, Plaintiffs allege that California is Invoca's "nerve center," *i.e.*, the place from where Invoca's "officers direct, control, and coordinate the corporation's activities" at issue in this case (*Hertz Corp. v. Friend*, 559 U.S. 77, 78 (2010)) including Invoca's development and operation of its "conversation intelligence software-as-a-service" that it provides to AT&T (FAC, ¶ 2), its interception of customers' calls with AT&T. (*id.* at ¶ 4), and its analysis of customers' communications during those calls. *Id.* at ¶¶ 5, 26; *see also Hertz*, 559 U.S. at 78 ("The phrase 'principal place of business' … refers to the place where a corporation's high level officers direct, control, and coordinate the corporation's activities, *i.e.*, its 'nerve center,' which will typically be found at its corporate headquarters"). These allegations create a sufficient nexus between Defendant's unlawful conduct and California to support nationwide application of CIPA. Indeed, as the court concluded in *Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1028 (N.D. Cal. 2011), non-resident plaintiffs have standing to bring CIPA claims against California defendants where, as here, the

intercepted communications were routed to the defendant's California headquarters for analysis. *See Valentine*, 804 F. Supp. 2d at 1024, 1026. In so concluding, the *Valentine* court explained that:

> A legislative purpose that articulates an interest in protecting those within California is not inconsistent with also allowing non-Californians to pursue claims against California residents. To conclude otherwise would mean the California Legislature intended to allow California residents to violate the CIPA … with impunity with respect to out-of-state individuals and entities, a result this Court declines to reach.

*Id*. at 1028; *see also Id*. at 1026 (agreeing with the plaintiffs "that they should be permitted to maintain their California statutory claims 'because the relevant conduct occurred in California' and because doing so will further California's interest in promoting a fraud-free business climate").

Likewise, numerous other California courts, including courts in this District, have found allegations of a similar nature to be sufficient to sustain extraterritorial application of CIPA and other California laws at the motion to dismiss stage. *See, e.g.*, *Meta Platforms*, 690 F. Supp. 3d at 1079 ("Meta contends the CIPA claim must be dismissed[ as to non-California residents]. I disagree[.] … [p]laintiffs have plausibly alleged that the conduct at issue, in terms of the design and marketing of the Pixel technology …, occurred in California."); *FullStory*, 712 F. Supp. 3d at 1257 ("Meta moves to dismiss the CIPA claim [as to non-California residents]. I addressed and rejected a similar argument in [*Meta Platforms* in part] because … plaintiffs there, like plaintiff here, plausibly alleged that the conduct at issue, in terms of the design and marketing of the Meta Pixel technology …, occurred in California …. Meta provides no new justification to consider reaching a different conclusion here") (citations omitted); *Carrese v. Yes Online Inc.*, 2016 WL 6069198, at *4 (C.D. Cal. Oct. 13, 2016) (permitting CIPA claims by "non-California residents … against a California defendant" where "'all of the communication at issue were recorded by Defendant in California'") (citation omitted); *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2016 WL 3543699, at *6 (S.D. Cal. June 29, 2016) (same); *see also Schmitt v. SN Servicing Corp.*, 2021 WL 3493754, at *3 (N.D. Cal. Aug. 9, 2021) (data breach allegations regarding a defendant who operated out of California "sufficient to allow out-of-state plaintiffs to seek recovery under California law"); *Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1079 (9th Cir. 2018), *certified question accepted sub nom. Oman v. Delta*

*Air Lines*, 2018 WL 10809386 (Cal. July 11, 2018), *and certified question answered*, 9 Cal. 5th 762 (2020) ("If the conduct that 'creates liability' occurs in California, California law properly governs that conduct"). This Court should follow suit.[3]

**V. CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny in full Defendant's motion to dismiss and Defendant's alternative motion to strike the nationwide class allegations. However, if the Court grants Defendant's motions in any respect, Plaintiffs respectfully request that the Court grant leave to amend. *See, e.g.*, *Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017) (holding lower court erred in denying leave to amend after dismissing first amended complaint); *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1183 (9th Cir. 2016) (reversing denial of leave to amend notwithstanding three prior amendments by the plaintiff).

Dated: August 29, 2025

Respectfully Submitted,

By: /s/ *Eugene Y. Turin*
Eugene Y. Turin

**McGuire Law, P.C.**
Eugene Y. Turin (State Bar No. 342413)
10089 Willowcreek Road, Suite 200
San Diego, CA 92131
Tel: (312) 893-7002
Fax: (312) 275-7895
eturin@mcgpc.com

*Counsel for Plaintiffs and the Proposed Class and Subclass*

[3] Because this Court should hold that Defendant's motion to strike nationwide claims is premature, and that the extraterritorial application of CIPA to non-California residents is proper, Defendant's argument that Plaintiffs' fail to adequately plead CAFA jurisdiction should also be denied.

**CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1**

The undersigned, counsel of record for Plaintiffs, certifies that the foregoing memorandum contains 5,440 words, which complies with the word limit of L.R. 11-6.1.

DATED: August 29, 2025

By: */s/ Eugene Y. Turin*

Eugene Y. Turin (SBN 342413)
10089 Willowcreek Road, Suite 200
San Diego, CA 92131
Telephone: (312) 893-7002
Email: eturin@mcgpc.com

*Attorneys for Plaintiffs*