TYLER G. NEWBY (CSB No. 205790)
tnewby@fenwick.com
MARY GRIFFIN SIMS (CSB No. 324073)
mgriffin@fenwick.com
YI CHEN (CSB No. 352696)
ychen@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

JANIE YOO-SCOTT (CSB No. 312715)
jyooscott@fenwick.com
FENWICK & WEST LLP
733 10th Street NW, Suite 400
Washington, DC 20001
Telephone: 202.970.3000
Facsimile: 650.938.5200

Attorneys for Defendant
INVOCA, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CAROLE WELLS; DONNA MARSHALL; MARTIN VALENCIA; and TANISHA DANTIGNAC individually and on behalf of similarly situated individuals,

Plaintiffs,

v.

INVOCA, INC.,

Defendant.

Case No.: 2:25-cv-01323-HDV-BFM

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Date: October 30, 2025
Time: 10:00 a.m.
Dept: Courtroom 5B
Judge: Hon. Hernán D. Vera

## I. INTRODUCTION

The Court should dismiss Plaintiffs' First Amended Complaint (Dkt. 19) ("FAC") for failure to state a plausible claim against Invoca. Plaintiffs' attempt to distort Invoca's software service to AT&T as violations of the California Invasion of Privacy Act (Cal. Penal Code §§ 630 *et seq.*) ("CIPA") is not supported by sufficient factual allegations or relevant legal authority.

First, Invoca is not liable under CIPA Section 631(a), because it is merely an extension of AT&T, a party to the communication. While district courts have disagreed on the test for when a technology service provider such as Invoca is a "party" to the communication, the Court does not need to resolve that issue here. The FAC fails to plead beyond conclusory statements that Invoca had the capabilities to use, or actually used, the communications between AT&T and Plaintiffs that its cloud-based software allegedly recorded. The Opposition confirms that it was AT&T, not Invoca, that uses and analyzes the recorded phone calls. The Court should therefore dismiss Plaintiff's CIPA Section 631(a) claim without ruling on the judicial split.

Second, Plaintiffs' CIPA Section 632(a) claim fails because they admit that they knew their calls with AT&T were being recorded. That concession defeats their assertion that there was a reasonable expectation of privacy. Without a "confidential" communication, there is no violation of Section 632(a).

Third, Plaintiffs' CIPA Section 637.5 equally has no merit. Without defining what constitutes "subscriber information," Plaintiffs speculate that Invoca must have received such information. Even if this factual allegation were in the FAC—it is not—Plaintiffs' interpretation of the statute is wrong. Plaintiffs' only theory is that the way Invoca becomes a "person receiving subscriber information" that was recorded by a provider of satellite or cable television in Plaintiffs' homes is by making the recording itself. Invoca cannot "receive" from the provider subscriber information that Invoca itself has allegedly recorded, and the Court should reject this circular logic.

Without allegations in the FAC that could support their claims, Plaintiffs attempt to borrow the factual allegations of the "analogous" *Busby v. Invoca, Inc.* matter throughout their Opposition. Because they are without plausible factual allegations of their own, and because no amendment can cure their flawed legal theories, the Court should dismiss Plaintiffs' FAC with prejudice.

## II. ARGUMENT

### A. Plaintiffs Fail To State A Claim Under CIPA Section 631(a).

Whether the FAC plausibly alleges that Invoca's provision of cloud-based call recording software to AT&T makes it a third party to AT&T's communications with Plaintiffs is not premature, as Plaintiffs argue. *See* Opp. at 4. Courts routinely decide this issue at the motion to dismiss stage. *See, e.g., Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 973 (N.D. Cal. 2023) (granting motion to dismiss and finding there was no CIPA wiretapping where software provider accessed and used the records for the purpose of furnishing service to a party to the conversation); *Williams v. What If Holdings, LLC*, No. 22-03780-WHA, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022) (granting motion to dismiss and finding that third-party website screen recording service was merely a tool used by the website operator to record its own communications with the plaintiff); *Cody v. Boscov's, Inc.*, 658 F. Supp. 3d 779, 782 (C.D. Cal. 2023) (same); *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1068 (C.D. Cal. 2023) (same); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832–33 (N.D. Cal. 2021) (same).

The FAC not only fails to plead facts leading to a plausible inference that Invoca has acted as a third-party eavesdropper, it pleads facts showing that Invoca acts solely as an extension of AT&T. The Opposition confirms that AT&T, not Invoca, uses and analyzes phone calls that AT&T records using Invoca's cloud-based software. *See, e.g.*, Opp. at 2 ("[Invoca's] broad suite of products are aimed at call recordings and transcriptions that *allow its customers, like AT&T*, to measure call quality, intent, and outcomes transforming conversations to actionable data.") (emphasis added); *see also* Mot. at 10. Because Plaintiffs fail to allege facts that, if true, show that Invoca has the capability of using recording communications for its own purposes, the Court should dismiss the FAC.

Plaintiffs' only factual allegation on this point in the FAC is their mischaracterization of Invoca's Privacy Policy. Invoca's Motion pointed out why Plaintiffs' skewed interpretation of the policy is false. *See* Mot. at 13–14. Instead of responding to that explanation, the Opposition simply regurgitates Plaintiffs' incorrect interpretation from the FAC. Opp. at 6. The cases that Plaintiffs cite to analogize to the misconstrued Privacy Policy are easily distinguishable because the

FENWICK & WEST LLP
ATTORNEYS AT LAW

allegations in those cases contained plausible factual details. *Jackson v. LinkedIn Corp.* contained "a plethora of allegations" of use for the defendant's own marketing, including alleged "monetiz[ing] the collected data through the sale of ads" and "enable[ing] advertisers to target users with relevant content or advertisements using the personal information and data." 744 F. Supp. 3d 986, 994 (N.D. Cal. 2024) (internal citation omitted). *Smith v. Google, LLC* alleged that the defendant "uses the data from its tracking tools to compile a detailed dossier, or digital fingerprint for each of its users," "matches that information with users' geolocation, gender, and general interests," and aggregated the collected data and presented the data "in an online account dashboard." 735 F. Supp. 3d 1188, 1197 (N.D. Cal. 2024) (internal citation omitted). *Gladstone v. Amazon Web Servs., Inc.* alleged that "Defendant [in its Service Terms] states that it can use information about how customers use and interact with the Services to improve those services." 739 F. Supp. 3d 846, 854 (W.D. Wash. 2024) (internal citation omitted).

FENWICK & WEST LLP
ATTORNEYS AT LAW

Aside from Plaintiffs' misinterpretation of Invoca's Privacy Policy, Plaintiffs fail to allege any facts about Invoca's reservation of rights to use data for its own purposes. As in *Yockey v. Salesforce, Inc.*, Plaintiffs' bare-bones allegation in paragraph 26 that "Invoca can perform comprehensive analysis on the content of the calls . . . identifying the category of the speaker and determining the intent of the call" is insufficient to support a reasonable inference that Invoca has the capability to use the recorded communications for any purposes other than furnishing them to AT&T. *See* Mot. at 12; Opp. at 6; 688 F. Supp. 3d 962, 973 (N.D. Cal. 2023).

The Opposition ignores the legion of cases finding that service providers analogous to Invoca do not violate Section 631(a). Instead, they cite only to cases applying the broader "capability test" and improperly imply that the law is settled. *See* Mot. at 8–10; Opp. at 4–7. Plaintiffs further argue that it is "irrelevant whether Invoca 'makes independent use of recorded calls,'" relying on *Javier v. Assurance IQ, LLC,* 649 F. Supp. 3d 891 (N.D. Cal. 2023). Opp. at 5–6, n.2. The law is clearly not settled, and district courts have not agreed on the test for when a service provider is an extension of a party to communications. *See* Mot. at 8–12.

Regardless, even if the Court applied *Javier*'s "capability to use" test, Plaintiffs still must plead facts to support a plausible inference that Invoca is capable of using the recordings its

software makes for Invoca's own, independent purposes. *See Heiting v. Taro Pharm. USA, Inc.*, 709 F. Supp. 3d 1007, 1017 (C.D. Cal. 2023) ("[A] plaintiff still must have at least pled some non-conclusory factual allegations to support the use capabilities of the third-party software company involved."); *Kotlarsz v. Integrity Vehicle Servs., Inc.*, No. 8:24-cv-00569-FWS-JDE, 2024 WL 5423132, at *4 (C.D. Cal. Oct. 31, 2024) (noting that the plaintiff "alleges only circumstances of *possible* use," which requires "too many logical leaps to be a reasonable inference") (emphasis in original). Plaintiffs' FAC is devoid of any such non-conclusory factual allegations, and the Court can dismiss Plaintiffs' claims without resolving the judicial split, as it previously did in *Tanner v. Acushnet Co.*, No. 8:23-cv-00346-HDV-ADSx, 2023 WL 8152104, at *5 (C.D. Cal. Nov. 20, 2023).

Plaintiffs' attempt to analogize two other cases involving Invoca—*Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949 (E.D. Cal. 2025) and *Busby v. Invoca, Inc.*, No. 24-cv-05542-JD, 2025 WL 822664 (N.D. Cal. Mar. 14, 2025)—fails. Much as Plaintiffs try to copy the arguments in *Busby* and *Tate*, the factual allegations in *this* case are distinguishable.

Unlike in *Busby*, the FAC does not allege that Invoca "expressly claims the right to independently use data from the calls it recorded to market and enhance its own services." *Busby*, 2025 WL 822664, at *1. Invoca submits that allegation in *Busby* was unsupported by Invoca's online terms of service, and in any event, Plaintiffs here "cannot simply rely on allegations in another complaint to support their claim." *IQVIA Inc. v. Medimpact Healthcare Sys., Inc.*, No. 21-CV-2081-GPC-DEB, 2022 WL 1125779, at *9 n.12 (S.D. Cal. Apr. 15, 2022). Plaintiffs' reference to paragraphs 57, 59, and 64 of the FAC do not salvage Plaintiffs' claims. Opp. at 5. Paragraphs 57 and 59 are Plaintiffs' summary of the law and their asserted legal conclusions. Paragraph 64 is an unsupported conclusory allegation that "Invoca also used its services to obtain information for its own independent purposes entirely unrelated to AT&T operations." Even if these were factual allegations—they are not—they are still insufficient. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Byars*, 656 F. Supp. 3d at 1059 (internal citation omitted); *see also Cody*, 658 F. Supp. 3d at 782–83 (dismissing wiretapping claim based on conclusory

FENWICK & WEST LLP
ATTORNEYS AT LAW

allegation that the software providers "harvest valuable data" from customer communications "for the benefit of their clients").

Plaintiffs' reliance on *Tate* is also misplaced. Applying the *Javier* "capability test," *Tate* held that "[o]btaining that data while reserving the capability to utilize it makes a third party distinct from one of the parties to the call," which "trigger[s] a violation of Section 631(a)." 762 F. Supp. 3d at 955. The *Tate* plaintiff similarly cited incompletely and misleadingly to Invoca's terms of service, which it alleged "expressly reserve the ability to use Client Data, as reasonably necessary for Invoca to provide and enhance its provision of services." *Id*. at 956 (internal citation omitted). The allegation of the reserved right to use the data was essential in *Tate*, even if it was premised on a false interpretation of the terms. *Id*. at 956 (distinguishing *Yockey* and stating, "[t]he plaintiffs in [*Yockey*] . . . were not able to point to evidence beyond the third party's possession of user data to substantiate their claim.").

FENWICK & WEST LLP
ATTORNEYS AT LAW

### B. <u>Plaintiffs' Knowledge Of The Recording Of Their Calls Is Fatal To Their Section 632(a) Claim.</u>

Plaintiffs fail to establish that the communications with AT&T that Invoca's software allegedly recorded are confidential. FAC paragraph 73 states, "Plaintiffs and the other Class Members did not expect that Invoca, an unknown third party, would intentionally use an electronic amplifying or recording device to record their confidential communications." Plaintiffs do not dispute that a conversation is not confidential under Section 632 if a party to that conversation knows it is being recorded. Opp. at 7–9. Plaintiffs attempt to skirt around the notification of recording they received at the start of their calls with AT&T. Mot. at 14–15. But, unlike in *Tate*, they do not and cannot deny having received the recording notification. *See* Opp. at 7–9. In *Tate*, in contrast, the complaint alleged that "[n]either VITAS nor Invoca obtain the consent of any caller to VITAS's call center, and callers are unaware that their speech is being recorded and analyzed." *Tate*, 762 F. Supp. 3d at 952. Here, Plaintiffs premise their allegation on not knowing that Inovca's software, not AT&T, was recording their calls, not that they were "unaware that their speech is being recorded and analyzed," as in *Tate*. By staying on the call after receiving notice that the call was being recorded, Plaintiffs consented to the recording and lacked an expectation of privacy.

*Kristensen v. Credit One Bank*, N.A., No. CV 14-7963 DMG (AJWx), 2016 WL 11757832, at *5 (C.D. Cal. July 11, 2016) ("[A] party's awareness that he or she is being recorded may establish that the party impliedly consented to the recording."); *Maghen v. Quicken Loans Inc.*, 680 F. App'x 554, 556 (9th Cir. 2017) (finding consent for recording when the consumer stayed on the line after notification that the call will be recorded); *White v. FIA Card Servs., N.A.*, No. 12cv2034-AJB (WVG), 2013 WL 756292, at *6 (S.D. Cal. Feb. 26, 2013) (dismissing section 632(a) claim because "a disclosure that the telephone calls may be recorded [ ] removes any reasonable expectation of privacy").

Plaintiffs argue that "they 'reasonably expected the conversations would only be between themselves and the AT&T contact center agent.'" Opp. at 8. But a consumer today who is notified of a recording at the start of a call would reasonably expect that multiple agents of AT&T are privy to the recording, not just the specific "AT&T contact center agent" who happened to answer a customer service call. Having been notified of the recording, Plaintiffs have no reasonable expectation of privacy as to Invoca, an agent of AT&T utilized by AT&T to help it service the call.

Plaintiffs further rely on inapposite cases to argue that they were not explicitly notified of Invoca's identity. Opp. at 8–9. But the facts in Plaintiffs' cited cases do not apply here since those cases concern written terms involving internet browser searches (*Calhoun v. Google LLC*), email interceptions (*In re Google*), and scanning messages for targeted advertising (*Campbell v. Facebook*). *See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 613 (N.D. Cal. 2021) (alleging that "Chrome sends . . . . personal information to Google when a user exchanges communications with any website that includes Google surveillance source code . . . regardless of whether a user is logged-in.") (internal citation omitted); *In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *1 (N.D. Cal. Sept. 26, 2013) ("Plaintiffs allege that Google continued to intercept, read, and acquire content from emails that were in transit . . . ."); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 838 (N.D. Cal. 2014) ("Plaintiffs allege that Facebook scans the content of these private messages for use in connection with its "social plugin" functionality."). In those cases, the question was whether the written disclosures buried in opaque terms of service and privacy policies informed the plaintiffs of the alleged use of the contents of their written communications. That is

not the case here. And the court in *In re Google* ultimately dismissed the Section 632 claim for failure to plausibly allege an objectively reasonable expectation. 2013 WL 5423918, at *22–23 ("[W]hile the defendant intended that the communication be kept confidential between himself and the recipient, he could not reasonably expect that the communications would not be recorded.") (citations omitted).

As for the rest of the paragraphs Plaintiffs cite in support, paragraphs 38, 70, 71, and 74 are legal conclusions, and paragraph 72 (alleging discussion of financial information) is legally irrelevant to this analysis—the contents of the call do not determine whether a communication is "confidential" under this Section. *See Flanagan v. Flanagan*, 27 Cal. 4th 766, 776 (2002) ("[T]he [CIPA] protects against intentional, nonconsensual recording of telephone conversations regardless of the content of the conversation or the type of telephone involved."). Finally, paragraphs 5, 32, 33, and 40 repeat the same unsupported, conclusory assertion that there was no consent. Plaintiffs' labels, conclusions, and formulaic recitation of the elements of claims are insufficient to survive Invoca's motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### C. **Plaintiffs' Application Of Section 637.5 To Invoca Is Baseless.**

Plaintiffs cannot subject Invoca to the requirements of Section 637.5. The only way Invoca falls under this Section is through subsection (h), which requires that Invoca receive "subscriber information." Mot. at 15. First, the FAC does not allege what information constitutes "subscriber information" or that Invoca received it. FAC ¶¶ 79–89. In their Opposition, Plaintiffs can only speculate that the contents of the calls at issue contain subscriber information "given the customer service nature of the calls." Opp. at 9. This is guesswork at best. And Plaintiffs' reproduction of the *Busby* plaintiffs' argument fails again. Unlike here, the *Busby* plaintiffs alleged in their complaint that Invoca received subscriber information. *See Busby*, No. 24-cv-05542-JD (N.D. Cal. Mar. 14, 2025), Dkt. 21 (First Amended Complaint) ¶ 93.

Plaintiffs' interpretation of Section 637.5(h) is also illogical within the structure of the statute. Section 637.5(a)(1) prohibits a satellite or cable company, such as AT&T, from using electronic devices, such as a microphone installed in a satellite or cable box, to record communications that take place inside the subscriber's residence without the customer's express

FENWICK & WEST LLP
ATTORNEYS AT LAW

written consent. Section 637.5(h) requires "any person receiving subscriber information" from companies such as AT&T to be subject to the limitations of the statute. But Plaintiffs do not allege that Invoca received subscriber information from AT&T; they allege Invoca directly recorded Plaintiffs' communications. Plaintiffs' interpretation of Section 637.5(h) is therefore circular; according to Plaintiffs, Invoca violates the statute by "receiving" the very recordings that Invoca makes. Moreover, this incorrect interpretation would render Section 637.5 superfluous given CIPA Section 632. The Court should reject Plaintiffs' unsupported assertion that Section 637.5 applies to Invoca.

### D. <u>The Court Should Dismiss Plaintiffs' Nationwide CIPA Claims Because All Plaintiffs In This Case Are California Residents.</u>

Invoca's motion to strike the FAC's nationwide class claims is not premature. A Rule 12(b)(6) motion may "be appropriate for evaluating the adequacy of a national state-law class allegation." *Freedline v. O Organic*s, No. 19-cv-01945-JD, 2020 WL 6290352, at *1 (N.D. Cal. Oct. 27, 2020). Courts in the Ninth Circuit routinely apply a choice-of-law analysis at the motion to dismiss stage when the facts to be developed through discovery will not change the analysis. *See, e.g.*, *Cover v. Windsor Surry Co.*, 14-cv-05262-WHO, 2016 WL 520991, at *5 (N.D. Cal. Feb. 10, 2016) (holding that it is not appropriate to delay the choice-of-law issue until class certification where further development of the factual record is not reasonably likely to materially impact the choice-of-law determination); *Davison v. Kia Motors America, Inc.*, No. 15-cv-00239-CJC (RNBx), 2015 WL 3970502, at *2, n.3 (C.D. Cal. 2015) (noting that "many courts have decided against deferring choice of law decisions until discovery or class certification" when "the material differences are sufficiently obvious from the pleadings"). Plaintiffs' Opposition quotes Invoca's Motion out of context, ignoring the case cited by Invoca supporting the application of *Mazza* at the pleading stage. Mot. at 17; Opp. at 10–11; *Frezza v. Google Inc.*, No. 5:12-cv-00237-RMW, 2013 WL 1736788, at *6 (N.D. Cal. 2013) ("[T]he principle articulated in *Mazza* applies generally and is instructive even when addressing a motion to dismiss.").

Plaintiffs' reliance on *Busby* is again misplaced because *Busby* involved an out-of-state resident plaintiff, which is absent in this case. *Busby*, 2025 WL 822664, at *1. The same is true

FENWICK & WEST LLP
ATTORNEYS AT LAW

for all of Plaintiffs' cited cases, such as *Meta Platforms*, *FullStory*, and *Kellman*, where the named plaintiffs were all non-California residents.[1] Because Plaintiffs in this case are all California residents, their argument regarding the extraterritorial application of CIPA is inapplicable here. *See* Opp. at 11–12. Discovery in this case would reveal nothing more related to the choice-of-law analysis while unfairly subjecting Invoca to additional costs in defending itself against Plaintiffs' frivolous nationwide allegations. *See Twombly,* 550 U.S. at 559 ("[I]t is only by taking care to require allegations that reach the level suggesting [a claim] that we can hope to avoid the potentially enormous expense of discovery in cases with no 'reasonably founded hope that the discovery process will reveal relevant evidence . . .'").

Because the Court should strike the FAC's nationwide class allegations, the FAC does not adequately plead Class Action Fairness Act (CAFA) jurisdiction. Mot. at 18–20. Plaintiffs fail to address this argument in their Opposition and therefore concede the point.

## III. CONCLUSION

For the foregoing reasons, Invoca respectfully requests dismissal of all claims with prejudice.

Dated: September 19, 2025

FENWICK & WEST LLP

By: */s/ Tyler G. Newby*
Tyler G. Newby
Attorneys for Defendant, Invoca, Inc.

[1] In all of the cases cited by Plaintiffs, some, if not all, of the plaintiffs lived outside California. *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1079 (N.D. Cal. 2023), *motion to certify appeal denied*, No. 22-cv-03580-WHO, 2024 WL 4375776 (N.D. Cal. Oct. 2, 2024); *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1257 (N.D. Cal. 2024); *Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 886 (N.D. Cal. 2022); *Busby*, 2025 WL 822664 at *1; *Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1026 (N.D. Cal. 2011); *Carrese v. Yes Online Inc.*, No. CV 16-05301 SJO (AFMx), 2016 WL 6069198, at *1 (C.D. Cal. Oct. 13, 2016); *Bona Fide Conglomerate, Inc. v. SourceAmerica*, No. 3:14-cv-00751-GPC-DHB, 2016 WL 3543699, at *4 (S.D. Cal. June 29, 2016); *Schmitt v. SN Servicing Corp.*, No. 21-cv-03355-WHO, 2021 WL 3493754, at *1 (N.D. Cal. Aug. 9, 2021); *Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1077 (9th Cir. 2018), *certified question accepted sub nom. Oman v. Delta Air Lines*, No. S248726, 2018 WL 10809386 (Cal. July 11, 2018), *certified question answered*, 9 Cal. 5th 762, 466 P.3d 325 (2020).

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Invoca, Inc., certifies that this brief contains 3,359 words, which complies with the word limit of L.R. 11-6.1.

Dated: September 19, 2025

FENWICK & WEST LLP

By: */s/ Tyler G. Newby*
Tyler G. Newby

Attorneys for Defendant, Invoca, Inc.

FENWICK & WEST LLP
ATTORNEYS AT LAW