UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MARTIN VALENCIA, et al.,

Plaintiffs,

v.

INVOCA, INC.,

Defendant.

Case No. 2:25-cv-01323-HDV-BFM

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS [20]**

1

## I.    INTRODUCTION

This putative class action involves customer service phone calls placed to AT&T, Inc. ("AT&T") and recorded by Defendant Invoca, Inc. ("Invoca"), a conversation intelligence software-as-a-service.  First Amended Complaint ("FAC") ¶¶ 1-3 [Dkt. 19].  As alleged, Invoca records the conversations of AT&T's callers, transcribes the dialogue, feeds the content to its internal artificial intelligence ("AI") algorithm, and returns the processed data to AT&T in the form of dashboards, reports, and searchable transcripts.  *Id*.  AT&T purportedly uses this analysis to promote their products more effectively to existing and potential customers.  *Id*.  Plaintiffs allege that, by failing to obtain consent or to notify them that their calls were being recorded by a third-party, Invoca wiretapped and recorded their calls to AT&T in violation of their privacy rights under California's Invasion of Privacy Act ("CIPA").

Defendant now moves to dismiss the FAC, arguing that Plaintiffs' allegations fall outside the scope of CIPA because Invoca was ostensibly an agent of AT&T and not a third-party using the recordings for its own purposes.  Defendant's Motion to Dismiss FAC ("Motion") [Dkt. 20].

For the reasons discussed below, the Court concludes that two recent district court decisions—*Busby v. Invoca, Inc.,* 2025 WL 822664 (N.D. Cal. 2025) and *Tate v. Vitas Healthcare Corporation,* 762 F. Supp. 3d 949 (E.D. Cal. 2025)—have analyzed the same issues and found (correctly and persuasively) that the allegations involving Invoca's software are sufficient to state a claim under CIPA.  The Motion is denied.[1]

---

[1] One exception applies.  Defendant claims Plaintiff Donna Marshall lacks standing under Rule 12(b)(1) as there is no record of calls between her and AT&T.  Motion at 6.  Plaintiffs concede the dismissal of Plaintiff Marshall's claims as to her only.  Opposition at 2 n.1.  Accordingly, the claims of Plaintiff Donna Marshall are dismissed.

## II.    BACKGROUND

### A.    Factual Background[2]

Plaintiffs Carole Wells, Donna Marshall, Martin Valencia, Tanisha Dantignac, and other similarly situated individuals (collectively, "Plaintiffs") called the AT&T customer service phone line, and allege that Invoca, a conversation intelligence software-as-a-service employed by AT&T, intercepted and recorded their conversations without Plaintiffs' consent.  FAC ¶¶ 2, 34–40.  AT&T is a cable television corporation that transmits television programs by cable to subscribers for a fee.  *Id.* ¶ 83.  Invoca's principal place of business is in California, and is a separate legal entity from AT&T.  *Id.* ¶ 57.

Invoca records phone conversations, transcribes them, and feeds that information into Invoca's internal AI.  *Id.* ¶ 2.  Invoca's internal AI then analyses the information and provides insights to its customers to optimize marketing strategies, improve customer service, and drive revenue growth.  *Id.* ¶¶ 22–23.  These insights are presented to the customer in the form of dashboards, a searchable database of calls and transcripts, and reports.  *Id.* ¶¶ 3, 24.  Both the customer and Invoca have access to and can ostensibly use the contents of the recorded conversations.  *Id.* ¶¶ 5, 25–26.  Additionally, Invoca's Privacy Policy states that it uses "Personal Data" such as "phone numbers and recordings" to "improve, operate, maintain, and, in some cases, market the Invoca Platform" and "conduct internal research in order to enhance the Invoca Platform Services." [3]  *Id.* ¶ 27.  Plaintiffs contend that Invoca uses its capabilities to obtain information for its own independent purposes unrelated to AT&T's operations.  *Id.* ¶ 64.

---

[2] The Court accepts all of Plaintiffs' plausible allegations as true, as it must at the motion to dismiss stage.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[3] The Court takes judicial notice of Invoca's Privacy Policy and its Security Compliance and Data Privacy Policy pursuant to Federal Rule of Evidence 201.  *See* Declaration of Tyler G. Newby ("Newby Decl.") Exs. A, B [Dkt 21-1-2].  Under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. Rule Evid. 201(b); *Reyn's Pasta*

AT&T implemented Invoca's services for the purposes of phrase-spotting, AI-powered conversation analysis, customer sentiment detection, product interest tracking, and promotional offer monitoring. *Id.* ¶ 30. Plaintiffs aver that Invoca intentionally tapped, monitored, read, learned, and otherwise intercepted the communication between AT&T and its customers, *id.* ¶¶ 31, 59, that neither AT&T nor Invoca informed callers to the AT&T customer service line that Invoca was listening, recording, and analyzing consumers' communications with AT&T, *id.*, ¶¶ 32, 40, and further assert that Plaintiffs did not consent to this activity. *Id.* ¶¶ 5, 33, 40, 60, 74.

### B.    Procedural Background

On July 7, 2025, Plaintiffs filed an amended class action complaint against Defendant Invoca. [Dkt. 19] Plaintiffs allege that customer service phone calls placed to AT&T were illegally and intentionally tapped, surveilled, and recorded by Invoca in violation of the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code §§ 631(a), 632(a), and 637.5.[4] *Id.* ¶¶ 1, 11–17. Plaintiffs further allege that Defendant's conduct originated from California and affected customers nationwide. *Id.* ¶¶ 47, 65, 75.

On July 28, 2025, Defendant brought this Motion to Dismiss, under Federal Rules of Civil Procedure 12(b)(1), and 12(b)(6), and Motion to Strike under Rule 12(f). The Motion is fully briefed. *See* Memorandum in Opposition to Motion ("Opposition") [Dkt. 24]; Reply in Support of Motion ("Reply") [Dkt. 26]. The Court heard oral argument on October 30, 2025, and took the matter under submission. [Dkt. 29].

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule

---

*Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (courts may take judicial notice of "court filings" as they are "readily verifiable, and therefore, the proper subject of judicial notice").

[4] CIPA is a prohibition against unauthorized wiretapping under the California Penal Code which may be used in a civil or criminal capacity.

of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Only where a plaintiff fails to "nudge[] [their] claims . . . across the line from conceivable to plausible" is the complaint properly dismissed. *Id.* at 680. While the plausibility requirement is not a probability assessment, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Determining whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In making this determination, allegations of material fact should be construed in the light most favorable to the plaintiff. *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) (citation omitted).

When alleging fraud, the party must meet the higher pleading standard imposed by Federal Rule of Civil Procedure 9(b). Fed. R. Civ. P. 9(b) (requiring parties to "state with particularity the circumstances constituting fraud or mistake"). "To properly plead fraud with particularity under Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged." *In re Cloudera, Inc.*, 121 F.4th 1180, 1187 (9th Cir. 2024) (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018)). "While the factual circumstances of the fraud itself must be alleged with particularity, the state of mind—or scienter—of the defendants may be alleged generally." *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007) (citation omitted).

5

## IV.    DISCUSSION

### A.    Count I: CIPA § 631(a)

Plaintiffs allege that Invoca wiretapped and recorded customer calls to AT&T in violation of their privacy rights under Section 631(a) of CIPA.[5]  Defendant moves to dismiss this claim on the grounds that Plaintiffs have failed to sufficiently allege Invoca as a third-party wiretapper or eavesdropper as opposed to an extension of AT&T.  Motion at 7.  Defendant maintains that, when service providers do not use the recordings for their own purposes, they are merely extensions of the party to the communications.  *Id.* at 8.  Invoca asserts that because it records calls solely for use by AT&T, it is nothing more than an extension of AT&T and is therefore exempt from liability under Section 631(a) as a party to AT&T's communications.  *Id.* at 7.

In response, Plaintiffs aver that Invoca, by virtue of its software and its application, is a third party, distinct from AT&T and its customers.  Opposition at 7.  Plaintiffs maintains that the "independent use" argument is legally irrelevant, but argues that in either case it is inapplicable here because Plaintiffs have sufficiently alleged independent use.  Opposition at 5.

It is undisputed that parties to a communication are exempt from Section 631(a) because a participant cannot intercept its own communications.  *See In re Facebook, Inc. Internet Tracking Litigation,* 956 F.3d 589, 607 (9th Cir. 2020).  But there is a split of authority as to how, in the context of third-party software, this party exception is to be applied under CIPA (*viz.*, whether a

---

[5] Section 631(a) of the California Penal Code provides for civil and criminal liability when:

> (1) Any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection with . . . any telegraph or telephone wire, line cable, or instrument . . . or who (2) willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit . . .; or who (3) uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained.

6

third party must make or have the capability to make independent use of the recorded calls, or if either is necessary to be alleged at the pleading stage).[6]  Motion at 8.

Two cases illustrate this distinction.  *See Rogers v. Ulrich,* 52 Cal. App. 3d 894, 899 (1975); *Ribas v. Clark,* 38 Cal. 3d 355, 359 (1985).  In *Rogers,* the defendant tape-recorded a conversation with the plaintiff without consent.  The court held that Section 631(a) was not violated because the defendant was a party to the conversation and, therefore, could not be considered an eavesdropper since he was not listening to a private conversation in secret.  *Rogers,* 52 Cal. App. 3d at 898-99.

In *Ribas,* the defendant listened in on a telephone conversation between plaintiff and his former wife on an extension telephone without plaintiff's knowledge or consent.  The court found that this conduct constituted eavesdropping, reasoning that, "[w]hile one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device."  *Ribas,* 38 Cal. 3d at 360-61.

Defendant claims that the facts presented here are similar to the tape recorder analogy in *Roger,* and that because the FAC does not allege facts showing that Invoca records communications for its own purposes—as opposed to merely providing a call recording service to AT&T—it is merely an extension of the customer.  Motion at 9.  The Court disagrees, and concludes that the facts in this action are more analogous to *Ribas*.  Two recent California district court cases are particularly instructive on this issue: *Busby v. Invoca, Inc.,* 2025 WL 822664 (N.D. Cal. 2025) and *Tate v. Vitas Healthcare Corporation,* 762 F. Supp. 3d 949 (E.D. Cal. 2025).

---

[6] Plaintiffs assert that addressing this issue is premature as it is a question of fact best answered after discovery.  Opposition at 4.  According to Plaintiffs, many courts have held that the issue of "whether an analytics provider like Defendant is a party to the communication or a third-party eavesdropper is a question of fact not suitable for determination on a motion to dismiss."  *Id.* (citing *Kauffman v. Papa John's Int'l, Inc.,* No. 22-cv-1492-L-MSB, 2024 WL 1713163, at *7 (S.D. Cal. Jan. 12, 2024)).

In *Busby*, the same defendant, Invoca, Inc., moved to dismiss the complaint on the grounds that they acted merely as an "extension of DISH and DirecTv." *Busby,* 2025 WL 822664, at*1.  The court rejected this assertion, finding instead that the plaintiffs had alleged in the complaint that Invoca is a separate legal entity from Dish and DirecTv who are customers of Invoca, and that Invoca was not a party to the conversations it recorded between plaintiffs and Dish/DirecTv.  *Id.* The court reasoned that, "the FAC alleges that Invoca expressly claims the right to independently use data from the calls it recorded to 'market' and 'enhance' its own services." *Id.*  In its analysis, the court distinguished *Rogers* holding that, "this is not a situation where DISH or DirecTV recorded their own conversations as in *Rogers v. Ulrich* . . .[r]ather, plaintiffs have plausibly alleged that Invoca, a third party, eavesdropped and secretly monitored the conversations plaintiffs had with DISH and DirecTV . . . conduct [] prohibited by Section 631(a)." *Id.* (citing *Ribas v. Clark,* 38 Cal. 3d at 359).

*Tate* involves Invoca as well.  In *Tate,* the plaintiff sued a healthcare provider for violating her privacy rights under CIPA sections 631(a) and 632(b) when the company used Invoca's software to record and analyze her calls.  *Tate,* 762 F. Supp. 3d at 952.  First, the court asked whether the software functioned as a recording made by a party to the call or as a separate entity and looked to *Rogers* and *Ribas* in concluding that it was.  Next, the court addressed the further "split among the district courts as to whether a third-party entity must actually use the data it obtains for its own purposes or if it merely needs to have the *capability* to do so to act as a third party in violation of section 631(a)." *Id.* at 954.  The court was persuaded by the reasoning in *Javier v. Assurance IQ, LLC,* that a use requirement already exists in one of section 631(a)'s discrete clauses and it would thus "be improper to impute that use requirement to all of section 631(a)." *Id.* at 955 (citing *Javier,* 649 F. Supp. 3d 891 (N.D. Cal. 2023)); *see* § 631(a) which prevents the "use[s], or attempt[s] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained."

Ultimately, the *Tate* court found that the facts were more analogous to *Ribas* where, "the California Supreme Court never considered the wife's friend's intentions or her use for the information obtained, and so to consider a third party's intent in obtaining data here would similarly be improper." *Id.* at 955 (citing *Javier,* 649 F. Supp. 3d at 900; *Ribas,* 360-61).  Lastly, the court

8

held that, "[b]ecause Invoca's software effectively 'listen[s] in' on user calls, independently analyzes that data, and the company reserves the *capability* to then use that data for its own purposes, Invoca's software may be in violation of 631(a)." *Id.* (emphasis added).

The facts of the present case are almost undistinguishable from both *Busby* and to *Tate*. Here, Plaintiffs allege that "Invoca is a separate legal entity from AT&T that offers software-as-a-service and not merely a passive device" [FAC ¶ 57], that Invoca "intentionally tapp[ed] . . . the line of telephone communications between Plaintiffs . . . and AT&T" [FAC ¶ 59], and that Invoca "willfully and without the consent of all parties to the communication . . . read[] or attempt[ed] to read or learn the contents of electronic communications between Plaintiffs . . . and AT&T." [*Id.*] In addition, Plaintiffs maintain that Invoca "has the *capability* to use contents of conversations it collects through its product offerings for its own purposes, and purposes beyond simply furnishing recordings to its customers." FAC ¶ 26 (emphasis added). For example, Plaintiffs allege that, "Invoca can perform comprehensive analysis on the content of the calls it eavesdrops upon, including identifying the category of the speaker and determining the intent of the call." *Id.* That is more than enough to state a claim under this CIPA subsection.

Moreover, Defendant's assertion that the FAC fails to allege independent use is contradicted by the pleadings. For instance, Plaintiffs specifically allege that "Invoca also used its services to obtain information for its own independent purposes entirely unrelated to AT&T operations." *See* FAC ¶ 64. Plaintiffs further allege that Invoca states in its own Privacy Policy that is uses "Personal Data . . . including phone numbers and recordings . . . to improve, operate, maintain, and in some cases, market the Invoca Platform and conduct internal research in order to enhance the Invoca Platform and Services." FAC ¶ 27.[7] In short, these allegations go beyond the existence of Invoca's capability and alleges actual use of the recorded calls for its own independent purposes. Without expressing an opinion on the legal debate over whether independent use is required, the allegations

---

[7] Although there is a factual dispute about the applicable Privacy Policy, that issue is beyond the scope of this pleading motion.

in the FAC are plausible and sufficient under a 12(b)(6) analysis.[8]  Defendant's motion is therefore denied as to Count I.

### B.    Count II: CIPA § 632(a)

Section 632(a) of CIPA prohibits the intentional use of an "electronic amplifying or recording device to eavesdrop upon or record [a] confidential  communication."  Motion at 14 (quoting Cal. Penal Code § 632 (a)).  Defendant argues that Plaintiffs fail to plead both the absence of consent and an expectation of privacy in their calls.  *Id.*

Plaintiffs' rejoinder is that section 632(c) defines a confidential communication as "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto."  This definition, they argue, encompasses Plaintiffs' allegations that they reasonably expected their conversations would be between ***themselves and an AT&T representative***, and not with Invoca.  *See* FAC ¶¶ 38, 73, 74 (Plaintiffs "did not expect that Invoca, an unknown third party, would intentionally use an electronic amplifying or recording device to record their confidential communications.").

The Court agrees that these allegations are legally sufficient as a matter of pleading.  Further, Plaintiffs explicitly pled lack of consent to the conduct at issue.  *See* FAC ¶¶ 5, 33, 40, 74; *see also Busby* at 1.  Plaintiffs have thus plausibly alleged a violation under section 632(a).

### C.    Count III: CIPA § 637.5

Next, Defendant argues that Section 637.5 of CIPA does not apply here because the FAC does not allege that Invoca owns, controls, operates, or manages a satellite or cable company, nor that it received subscriber information from a cable television or satellite corporation.  Motion at 15 (citing CIPA § 637.5).  Here, Plaintiffs allege that AT&T is a cable television corporation and that Invoca received subscriber information from them while providing service.  *See* FAC ¶¶ 30, 72, 83, 84, 86.  As stated in section 637.5(h), "[a]ny person receiving subscriber information from a satellite

---

[8] The Court cautions Plaintiffs, as it did at the hearing, that Rule 11 requires that Plaintiffs have a good faith basis for these facts moving forward.

or cable television corporation shall be subject to the provisions of this section." *See Busby* at 1. Plaintiffs have plausibly alleged a violation under section 637.5.

      **D.**    **Motion to Strike Nationwide CIPA Claims Under Rule 12(f) and CAFA Jurisdiction**

Defendant moves to strike the CIPA claims under Rule 12(f) of the Federal Rules of Civil Procedure on the basis that the nationwide claims are precluded by choice-of-law principles.  Motion at 16.  Plaintiffs correctly counter, however, that this argument is premature at this stage of the proceedings and should be decided at the class certification stage or on summary judgment after further discovery is conducted.  Opposition at 10 (citing *Busby,* 2025 WL 822664, *2); *see also, e.g., Doe v. FullStory, Inc.,* 712 F. Supp. 3d 1244, 1257 (N.D. Cal. 2024).  In addition, Plaintiffs have plausibly alleged that Defendant's conduct affected customers nationwide and originated from (as well as occurred in) California, where Defendant's principal place of business is located.  *See* FAC ¶¶ 11, 65, 75; *see also Busby* at 2.  Because these allegations create a sufficient nexus between Defendant's conduct and California, nationwide application of CIPA is permitted.  Opposition at 11 (citing *Valentine v. NebuAd, Inc.,* 804 F. Supp. 2d 1022, 1026, 1028 (N.D. Cal. 2011).  Lastly, Defendant's claim that Plaintiffs fail to adequately plead CAFA jurisdiction is also premature. *See* Opposition at 13 n.3.

**V.**    **CONCLUSION**

For the reasons discussed above, Defendant's Motion is denied.

Dated: November 17, 2025

                          Hernán D. Vera
                          United States District Judge