**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MARTIN VALENCIA, et al.,

Plaintiffs,

vs.

INVOCA, INC.,

Defendant.

Case Number: 2:25-cv-01323-HDV-BFM

**~~[PROPOSED]~~ ORDER APPROVING STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

Having considered the papers, and finding that good cause exists, the Parties' Stipulated Order re Discovery of Electronically Stored Information is approved.

**IT IS ORDERED.**

DATED: July 20, 2026

BRIANNA FULLER MIRCHEFF
UNITED STATES MAGISTRATE JUDGE

Eugene Y. Turin (SBN 342413)
**McGuire Law, P.C.**
10089 Willowcreek Road, Suite 200
San Diego, CA 92131
Tel: (312) 893-7002
Fax: (312) 275-7895
eturin@mcgpc.com

*Counsel for Plaintiffs and the Putative Class Members*

Tyler G. Newby (CSB No. 205790)
tnewby@fenwick.com
Mary Griffin Sims (CSB No. 324073)
mgriffin@fenwick.com
Yi Chen (CSB No. 352696)
ychen@fenwick.com
**FENWICK & WEST LLP**
One Front Street, 33rd Floor
San Francisco, CA 94111
Telephone: 415.875.2300
Facsimile: 415.281.1350

Janie Yoo-Scott (CSB No. 312715)
jyooscott@fenwick.com
**FENWICK & WEST LLP**
1155 F Street NW, 12th Floor
Washington, DC 20001
Telephone: 202.970.3000
Facsimile: 650.938.5200

*Attorneys for Defendant Invoca, Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MARTIN VALENCIA, et al.,

Plaintiffs,

vs.

INVOCA, INC.,

Defendant.

Case Number: 2:25-cv-01323-HDV-BFM

**[PROPOSED] STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

## 1. PURPOSE

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules.

This Order supplements all other discovery rules and orders. This Order may be modified at the Court's discretion or by stipulation.

## 2. COOPERATION

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter.

## 3. PRESERVATION

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved:

a) The parties will agree to the relevant time period for collection and review of ESI;

b) The producing party will inform the requesting party about which data repositories within the producing party's possession, custody, or control have been searched/and or collected from, to identify potentially responsive or relevant documents or ESI;

c) The parties will promptly disclose data sources upon learning that they are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P.26(b)(2)(B), and ESI from these sources will be preserved but not searched, reviewed, or produced; and

d) The parties agree data from these sources (a) could contain relevant information but (b) under the proportionality factors, should not be preserved: Defendant's employees' personal email accounts and mobile devices, unless the parties learn that specific, relevant information exists in an employee's personal account or device.

**4. SEARCH**

The parties agree that each producing party is best situated to determine the most appropriate method(s), procedures, and technologies - including search terms, TAR, or other analytics - for that producing party to search, collect, cull, and produce documents in response to discovery. If a Party intends to use TAR or AI to cull or otherwise exclude ESI from collection, review, or production, the Parties shall first meet and confer to agree on a TAR/AI protocol, including validation and disclosure of metrics. The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery. Each producing party may—but is not required to—use search terms, provided that the producing party alerts the requesting party before doing so. The requesting party may request to see the producing party's search terms, including hit counts for each search term that sets forth the unique number of hits and the total hits, and add or propose modifications to the terms. The parties shall meet and confer in good faith to come to an agreement on any search terms used. For sources not readily amenable to search terms, the producing party is best equipped to determine whether search terms or other approaches—such as retrieval of documents and sources identified during custodial interviews—is appropriate for each such source.

**5. REVIEW PROCEDURES**

Nothing in this Order may be construed or interpreted as precluding a Producing Party from performing a responsiveness review to determine if documents captured by search terms are in fact relevant to the Requesting Party's discovery requests. Similarly, nothing may be construed or interpreted as precluding a Producing Party from performing, by any means, a privilege review of documents. Further, nothing in this Order requires the production of documents that are irrelevant, privileged, or otherwise protected from disclosure merely because the

documents hit upon a search term.

## 6. PRODUCTION FORMATS

Image File Format

Unless included as an exception in this order, a Producing Party shall convert ESI from its native file format to an image file for production, subject to the following specifications:

a) Images shall be produced for each page of each document (1) in Single Page 1 bit Group IV .tiff files, (2) with an image resolution of at least 300 DPI.

b) To the extent reasonably possible, the imaged Data shall retain all attributes of the native or hard-copy file, such as document breaks and original document orientation (*i.e.*, portrait to portrait and landscape to landscape), except for emails containing images and .tiff Excel files. The following formatting shall be applied:

c) Word processing documents shall be processed to .tiff format and imaged showing track changes or edits, comments, notes, and other similar information.

d) Spreadsheet files with redactions shall be produced as redacted natives.

e) Presentation files shall be processed to .tiff format and showing comments, hidden slides, speakers' notes and similar data, where present in the original file.

f) Embedded documents (*e.g.*, a spreadsheet embedded within a word processing document) will be extracted, produced as independent document records within a continuous Bates range and related back to the respective immediate parent document (*e.g.*, standalone file, email message, etc.) if the parent document is not produced in native format. Embedded images (*e.g.*, gif images often found in email signatures, screenshots contained within a document, etc.) should be suppressed from

extraction and produced as part of the document in which they are contained to the extent possible. If not possible through the use of reasonable efforts, then embedded images should be extracted and produced as set forth above with respect to embedded documents.

g) Extracted text shall be produced as text files at the document level, with a file naming convention that matches the "BegBates" number of the document and ends with extension ".txt", with a text directory for each production volume, and with a relative file path to the text file provided in the related database load file. With the exception of .tiff, .pdf, and other image file types for which the text cannot be extracted, the text of documents should be extracted directly from the Native File without using Optical Character Recognition ("OCR"), except in the case of (a) privileged documents embedded into a parent document, in which case the text of the parent document shall be extracted using OCR; and (b) redacted documents. Documents produced in redacted form should not have text files populated with extracted text but should instead have text files populated with OCR data which will not contain the redacted data. If a document does not contain extractable text, the Producing Party shall provide OCR files for that document to the extent possible.

h) Any Party may make a reasonable request for a color image of any produced document to the extent it reasonably believes a color version is likely to meaningfully impact the review of such document, the production of which shall not unreasonably be withheld. Production of color images, whether or not from the request of the Receiving Party, may be produced as either .tiff or .jpeg / .jpg files.

i) Parent-child relationships within a document family (the association between an attachment and its parent document) shall be preserved. Each document shall be produced with the production number for the first and

last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the extended document family. If one document in a document family is responsive, then all documents in that family will be produced, with the exception of any documents which are fully withheld for privilege. Fully withheld documents within a produced family will be produced with a slip sheet which states "WITHHELD FOR PRIVILEGE."

j) Linked files (*i.e.*, hyperlinks pointing to files stored in the cloud or a shared repository such as SharePoint and other types of collaborative data sources, instead of being directly attached to a message as has been historically common with email communications), are not attachments, both because the data resides in a different location than the document linking to it and because that data may have been modified since the document linking to it was created or sent. The Parties agree that hyperlinked documents do not need to be collected, reviewed, or produced in the first instance. If after production, Receiving Party reasonably believes a reasonable and proportional number of hyperlinks are responsive, non-privileged and are not duplicative or cumulative of any other source, the Parties shall meet-and-confer to assess collection of the identified embedded file(s) and/or hyperlinks, including assessing burden and cost, and, if applicable, production format. The parties understand that existing tools may not be able to provide historical document versions that correspond to the document as circulated when the hyperlink was provided. There is no obligation for a party to obtain copies of hyperlinked documents that are within the possession, custody and/or control of third parties.

k) Text, instant messages and other SMS will be processed in 24-hour increments.

l) Most Inclusive Email Productions: Email threads are email communications that contain prior or lesser-included email communications that also may exist separately in the Party's electronic files. A most inclusive email thread is one that contains all the prior or lesser-included emails, including attachments, for that branch of the email thread. The Parties agree that removal of wholly included, prior-in-time, or lesser-included versions from potential production will reduce all Parties' costs of document review, production, and litigation-support hosting. Threading is therefore permitted, though not required.

m) For the avoidance of doubt, only email messages for which the parent document and all attachments are contained in the more inclusive email message will be considered less inclusive email messages that need not be produced. If the later in time message contains different text (such as where the later message adds in-line comments to the body of the earlier message) or does not include an attachment that was part of the earlier message, then the earlier message must be produced.

n) To the extent that an email thread contains privileged communications, such communications can be redacted. If an email thread contains both responsive, privileged communications and responsive, non-privileged communications, the entire email thread cannot be withheld as privileged.

o) Proprietary Third-Party Software. To the extent that information produced pursuant to this Order cannot be rendered or viewed without the use of proprietary or third-party software, the Parties agree to meet and confer to minimize any expense or burden associated with the production of such information in an acceptable format.

p) All documents will be processed in the Pacific time zone, to allow for uniformity between Parties' productions.

q) Production Bates numbers shall be electronically branded to the lower

right-hand corner of .tiff images and confidentiality designations (if applicable) shall be electronically branded to the lower left-hand corner of .tiff images so that they legibly print with the images. The Parties shall use reasonable efforts to ensure that production Bates numbers:

- are unique and consistent across the entire production; provided, however, that Parties may use multiple prefixes to reflect productions from separate entities or related to specific experts;
- maintain a constant prefix across the production;
- contain a prefix that clearly identifies the Producing Party or identified group of Producing Parties;
- contain no special characters (other than dash "-" or underscore "_") or embedded spaces; and
- are sequential within a given document.

Non-Convertible Files

a) Certain types of files such as system, program, proprietary files, audio files, and video files may not be amenable to conversion into .tiff format. Such files will not be converted into .tiff format. To the extent that the Parties have not excluded these files from production elsewhere in this ESI Order, these files will be produced in their native format.

b) In addition, certain file types may exist in a document collection that contain no useful or relevant information/detail to the Litigation such as, files approaching "0" KB file size, thumbs.db, certain .htm and .tmp and similar file types with no substantive content. The Parties agree that such files need not be identified or produced.

Native Files

a) In addition to the types of Data listed in Paragraph A above, a Producing Party will produce certain additional types of ESI in their native format, subject to the following specifications:

b) The Parties agree that they shall produce Microsoft Excel files, .CSV files and other similar spreadsheet files as Native Files. The Parties may provide a copy of the native file with redactions in lieu of .tiff format.

c) Where Native Files are produced in lieu of .tiff images, each Native File will be assigned a unique production number. The Producing Party will produce a placeholder (a single-page .tiff slip sheet indicating that the native item was produced) along with the file itself in native format. The placeholder will be electronically branded with the production Bates number in the lower right-hand corner and the Phrase "DOCUMENT PRODUCED IN NATIVE FORMAT" (or similar phrasing) branded in the center of the page. The Producing Party shall also electronically brand any confidentiality or similar endorsements in the lower left-hand corner of the placeholder. To the extent that any file identified for production in native format contains redaction, and cannot be redacted natively, the Producing Party shall convert that file to .tiff format and produce it with the necessary redactions, along with OCR text that reflects such redactions. All such OCR text will be Unicode-compliant (UTF-8) to the extent practical. If such conversion is unduly burdensome or renders the document unusable, the Producing Party may produce the document in any reasonably usable form as may be agreed upon by the respective Parties.

d) All redacted .tiff images shall be produced in accordance with the image load file specifications in this order, and any other provisions for the production of .tiff images contained herein. Documents produced in redacted form should not have text files populated with extracted text but should instead have text files populated with OCR data which will not contain the redacted data.

e) The original unredacted Native File shall be preserved pending conclusion of the Litigation.

f) If a Native File is used at a deposition or hearing in this Litigation, or attached to a motion or other filing, it shall be accompanied by its production number-stamped placeholder .tiff image in order to facilitate tracking and authentication thereof. The Parties may, but are not required to, further mark fixed images of Native Files with additional numbering for ease of identification at a deposition or hearing.

De-Duplication

a) Each Party or group of Parties may remove exact duplicate documents based on MD5 / SHA-1 hash values at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. The Parties agree that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. De-duplication may be done across the entire collection (global de-duplication) and the All Custodians field will list each custodian, separated by a semi-colon, who was a source of that document. Should the All Custodians metadata field produced become outdated due to rolling productions, an overlay file providing all the custodians for the affected documents will be produced.

Load Files

a) The load files accompanying scanned paper documents will include the following objective coding fields, to the extent applicable:

| Field | Field Description |
|---|---|
| BEGBATES | First Bates identifier of item |
| ENDBATES | Last Bates identifier of item |
| BEGATTACH | Starting Bates number of a document family |

| | |
|---|---|
| ENDATTACH | Ending Bates number of a document family |
| PAGECOUNT | Number of pages |
| TEXTLINK | Link to text file for the document |
| CUSTODIAN | Name of custodian or custodial file |
| CONFIDENTIALITY | Confidentiality designation assigned to document |
| REDACTION | Indicate whether document was redacted electronically after scanning |

b) The following Metadata fields shall be included in Load files accompanying ESI, to the extent available and/or unredacted:

| Field | Description |
|---|---|
| BEGBATES | First Bates identifier of item |
| ENDBATES | Last Bates identifier of item |
| BEGATTACH | Starting Bates number of a document family |
| ENDATTACH | Ending Bates number of a document family |
| PRODVOL | Production volume |
| PAGECOUNT | Number of pages |
| ATTACHCOUNT | Number of files attached to parent |
| CUSTODIAN | Name of custodian or custodial file |
| ALLCUSTODIANS | Individual(s) from whom the document was obtained and de-duplicated out during global de-duplication |
| CONFIDENTIALITY | Confidentiality Designation |
| AUTHOR | Any value populated in the author field of the document properties |

| Field | Description |
|---|---|
| FROM | Sender of email message, message sent via messaging platform, or calendar invite |
| TO | All recipients that were included on the "To" line of an email message or calendar invite. Recipients of a message sent via messaging platform |
| CC | All recipients that were included on the "CC" line of message or calendar invite |
| BCC | All recipients that were included on the "BCC" line of message or calendar invite |
| EMAIL SUBJECT | Subject of message or calendar invite pulled from the document properties. Name of messaging channel |
| DATETIMECREATED | Date and time file was created according to filesystem information |
| DATETIMEMODIFIED | Date and time file was modified according to filesystem information |
| DATETIMESENT | The sent date and time of the message |
| DATETIMERECEIVED | The received date and time of the message |
| FILENAME | contents of this Metadata field, or an equivalent |
| FILEEXT | File extension of document |
| FILESIZE | Size of the file in bytes |
| FILEPATH | The directory structure of the original file(s) |
| HASHVALUE | Unique electronic signature of email or electronic file used for deduplication. |
| THREADED | Unique identification number that permits threading of email or chat conversations |
| ITEMTYPE | Identifies whether the file is an email, attachment, or Standalone efile |

| Field | Description |
|---|---|
| NATIVEFILEPATH | Link to the native file (if any) |
| TEXTFILEPATH | Link to the extracted text/OCR file for the document |
| REDACTION | Identifies in a document has been redacted |

c) These Metadata field values will be provided to the extent available at the time of collection and processing, except that they may be redacted if privileged or if the information in the Metadata is protected by law or Court Order. This list of fields does not create any obligation to create or manually code fields that do not exist as part of the original Metadata of the document.

Technical Variances

a) Recognizing that each producing party may experience production issues due to data systems or files that may not be fully compatible with the technical specifications set forth herein, any practice or procedure set forth herein may be varied by agreement of the Parties, confirmed in writing, to accommodate such issues and/or where such variance is deemed appropriate to facilitate the timely and economical production of Documents or ESI. No Party shall unreasonably object to any such variance.

**7. AI USAGE**

No party or authorized recipient may input, upload, or submit DISCLOSURE OR DISCOVERY MATERIAL into any modern artificial intelligence platform, including any generative, analytical, or large language model based tool ("AI"), unless the AI provider is contractually prohibited from: (1) storing or using inputs to train or improve its model; and (2) disclosing inputs to any third party except where such disclosure is essential to facilitating delivery of the service. Where disclosure to a third party is essential to service delivery, any such third party shall be bound by

obligations no less protective than those required by this Order. In addition, the AI provider must contractually afford the party or authorized recipient the ability to remove or delete all DISCLOSURE OR DISCOVERY MATERIAL upon request. A party intending to use AI that it contends meets these requirements must retain written documentation of these contractual protections.

**8. PRIVILEGED DOCUMENTS**

a) Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding.

b) Upon written notice pursuant to Fed. R. Civ. P. 26(b)(5)(B), the receiving party shall promptly return, sequester, or destroy the specified, inadvertently disclosed materials and all copies thereof.

c) Until the claim of privilege is resolved, the receiving party may not use the inadvertently disclosed materials for any other purpose than to dispute the claim of privilege.

d) Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

**9. PRIVILEGE LOGS**

a) A producing party shall create a privilege log of all documents fully withheld from production on the basis of a privilege or protection, unless otherwise agreed or excepted by this Order, and produced in Excel format. Privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available non-privileged metadata that the parties have agreed to produce, including author/recipient or to/from/cc/bcc names or email

addresses; the subject matter or title; and date created. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure. Privilege logs will be produced to all other parties on a rolling basis no later than 60 days after delivering a production unless an earlier deadline is agreed to by the parties.

b) With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

c) Absent a showing of good cause, activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

d) Pursuant to Fed. R. Evid. 502(d), the production of any documents in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law. If a Producing Party produces material that is subject to a claim of privilege or work product or other protection, inadvertently or otherwise, the obligations of the Requesting Party/Receiving Party are those set forth in Sections 10 and 11 of the Stipulated Protective Order.

**10. MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: July 17, 2026

FENWICK & WEST LLP

By: */s/ Tyler G. Newby*
Tyler G. Newby
Mary Griffin Sims
Yi Chen
Janie Yoo-Scott

Attorneys for Defendant

Dated: July 17, 2026

MCGUIRE LAW, P.C.

By: */s/ Eugene Y. Turin*
Eugene Y. Turin

Attorneys for Plaintiffs